**BUCK RUN BAPTIST CHURCH, INC., Appellant,**

v.

**CUMBERLAND SURETY INSURANCE COMPANY, INC., Appellee.**

No. 97–SC–979–DG.

Supreme Court of Kentucky.

Dec. 17, 1998.

Robert W. Kellerman, Stoll, Keenon & Park, LLP, Frankfort, KY, for Appellant.

Susan I. Hellerman, Lexington, KY, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals reversing an order staying arbitration by the circuit court. The underlying dispute is between Buck Run Baptist Church, Inc. and Cumberland Surety Insurance Company, Inc. on a performance bond issued by Cumberland which guarantees performance of the general contractor on the construction of a new sanctuary and educational building for the church.

The principal issue is whether Buck Run can be required to arbitrate with Cumberland Surety under contractual provisions between the church and its general contractor to which Cumberland Surety issued a performance bond for the satisfactory completion of the construction project. Buck Run argues that the dispute is not subject to arbitration because the performance bond is an insurance contract rendering any dispute arising thereunder exempt from arbitration pursuant to KRS 417.050. Other questions raised will be considered in this Opinion.

In 1993, Buck Run Baptist Church entered into a standard agreement between owner and contractor pursuant to a standard form

issued by the American Institute of Architects with Z & J Construction, Inc., a Kentucky corporation, for the construction of a new worship center and educational building for the church in rural Franklin County, Kentucky. Pursuant to the terms of the contract, Buck Run and Z & J agreed that all controversies and claims arising out of the contract or from any breach thereof would be subject to binding arbitration. At the same time, Cumberland Surety issued a Payment and Performance Bond in the amount of $1,472,400, which provided that the contract between Buck Run and Z & J was made a part of the bond, the same as though it was set forth herein.

In the Fall of 1993, there were concerns about the performance of the contract, and on July 21, 1994, the project architect notified Buck Run that sufficient cause existed to terminate the contractor. Pursuant to the terms of the bond, Cumberland retained another contractor to complete the project; however, a dispute arose as to the performance of the new contractor and Buck Run refused to pay the remainder due on the contract. Cumberland made a demand for arbitration and later filed a declaratory judgment action seeking to compel Buck Run to arbitrate claiming that the church had wrongfully refused to pay the remaining contract balance of $66,522.54. Buck Run responded that the project had not been completed and that the dispute with Cumberland was not subject to arbitration because KRS 417.050 provided that disputes arising from insurance contracts are not subject to arbitration. The circuit court determined that the claims were not subject to arbitration because of the exemption. The Court of Appeals reversed the circuit court and in a split decision, determined that arbitration was the proper remedy. This Court granted discretionary review.

This dispute involves the completion of certain requirements of a construction contract, the entitlement of Cumberland Surety to the balance due under the construction contract and other damages. The proposed arbitration proceeding does not involve an insurance contract which is exempt from compulsory arbitration under the terms of KRS 417.050, and consequently, the Court of Appeals was correct when it determined that the trial court was in error by finding that the term "insurance contracts" as set forth in KRS 417.050 was intended to include the surety bond issued by Cumberland in this case. *Cf. Valley Construction Co. v. Perry Host Management Co.*, Ky.App., 796 S.W.2d 365 (1990). There was no disagreement between the parties as to their respective rights, duties and obligations under the payment and performance bond. Cumberland discharged its surety obligation under the bond by causing to have performed the Z & J original construction contract. The present dispute arises from a disagreement as to whether Cumberland completed its construction project consistent with the original contract terms and conditions.

The Cumberland Surety performance bond clearly and specifically incorporated by reference the construction contract between Buck Run and Z & J. Therefore, the Court of Appeals was correct in its determination that if the arbitration provisions of that contract are otherwise enforceable, they are binding on Buck Run. Cumberland, in effect, stood in the shoes of Z & J and became the contractor on the project. Consequently, Cumberland is entitled to enforce the construction contract arbitration agreement. This dispute involves a construction contract, and not the applicability of an insurance exemption to the statute.

*Home Lumber Co. v. Appalachian Regional Hospitals, Inc.*, Ky.App., 722 S.W.2d 912 (1987), held that a prime construction contract which required arbitration could be incorporated by reference into a purchase order contract with a material supplier. However, a majority of the Court of Appeals panel in that case believed that there was a question of fact and remanded the case for a factual determination of that question. In this case, the language of the performance bond clearly incorporates by reference the contract between Buck Run and Z & J. Therefore, *Home Lumber Co., supra*, is clearly distinguishable.

Such a decision is consistent with the well reasoned authorities from other jurisdictions which have considered the question.

*See Commercial Union Insurance Co. v. Gilbane Building Co.,* 992 F.2d 386 (1st Cir. 1993). Kentucky has favored the enforcement of private arbitration contracts. *Cf. Kodak Mining Co. v. Carrs Fork Corp.,* Ky., 669 S.W.2d 917 (1984); *Fite & Warmath Constr. Co. v. MYS Corp.,* Ky. 559 S.W.2d 729 (1977). In *MYS Corp., supra,* this Court observed that there is a significant difference between an adhesion contract in which the parties have disparate bargaining power and a contract which voluntarily has been entered into by sophisticated and knowledgeable businessmen concerning a financial transaction of considerable magnitude. Here the church had the advice of a professional architect who in fact recommended that it terminate the original construction contract. As noted in *MYS Corp.,* the parties should not be free to repudiate promises to arbitrate.

There is a significant difference between types of insurance contracts contemplated by KRS 417.050 as exempt from arbitration and the typical construction contract. In the case of the ordinary insurance contract between a policyholder and an insurance company, it can readily be understood why the legislature exempted future disputes from being subjected to compulsory arbitration because such contracts are contracts of adhesion to which the insured parties have limited bargaining power. However, a contractual relationship which involves a commercial construction project, such as we have here, involves a negotiated voluntary agreement between relatively sophisticated commercial entities and a surety company, each of which undertakes a significant financial obligation. *See MYS Corp.* The surety bond involved in such a transaction is generally not a contract of adhesion and generally does not include provisions which create disparity between the parties. There is a considerable difference between the domestic retail insurance policy sold to individuals and corporations and the typical surety bond which involves commercial building projects.

Arbitration is very common in the construction industry because it has been found to be an effective method for resolving the many factual construction related disputes that occur during a construction project.

The American Association of Architects has developed a standard form contract which is widely used in the industry and contains broad arbitration provisions. Many times building disputes like the one considered in this case present issues that are more factual than legal, and a construction professional is better suited to resolve the issues than a juror or a judge who is relatively unfamiliar with industry practices.

We are not persuaded by the argument of Buck Run that KRS 304.1–030 defines the word "insurance" as including a contract to act as a surety. That provision in the insurance code does not define the word insurance for all statutory purposes, but merely defines the word for purposes of the insurance code. The legislature did not define the term "insurance contract" for the purpose of KRS Chapter 417. We agree with the Court of Appeals that the legislature intended to recognize a conceptual difference when it enacted KRS 417.050, the arbitration exemption for insurance contracts.

■ The term insurance contract is nowhere defined in KRS 417.050. The term insurance is defined for certain purposes only in the Kentucky Insurance Code as including sureties. Although Kentucky surety companies are regulated by the Kentucky Insurance Department for certain purposes, there is no indication that the definition found in the insurance code is meant to apply to the Kentucky Arbitration Statute. A contract of suretyship is not a contract of insurance. The distinctions between the two are significant in the context of arbitration because they emphasize why the legislature would not permit an insurer to compel arbitrations.

In the insurance code itself, surety insurance is separately defined in KRS 304.5–060. In the absence of a specific definition of insurance in KRS 417.050, the word is used in its common application. *Cf. Louisville Country Club, Inc. v. Gray,* 178 F.Supp. 915 (W.D.Ky.1959).

■ An insurance policy is a contract of indemnity whereby the insurer agrees to indemnify the insured for any loss resulting from a specific event. The insurer undertakes the obligation based on an evaluation of the market's wide risks and losses. An in-

surer expects losses, and they are actuarially predicted. The cost of such losses are spread through the market by means of a premium.

In contrast, a surety bond is written based on an evaluation of a particular contractor and the capacity to perform a given contract. Compensation for the issuance of a surety bond is based on a fact-specific evaluation of the risks involved in each individual case. No losses are expected. Sureties maintain close relationships with the contractors they bond and require the contractor to sign an indemnity contract in favor of the surety company. As such a surety's relationship to its principal is more like that of a creditor/debtor than that of the traditional insurer/insured. *See National Shawmut Bank of Boston v. New Amsterdam Casualty Co.,* 411 F.2d 843 (1st Cir.1969).

Although not essential to the decision in this case, we believe that the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015 (1988) should be construed narrowly and in a manner which furthers its own policies as well as the Federal Arbitration Association. The McCarran–Ferguson Act does not prevent Cumberland as a surety from enforcing its arbitration agreement under KRS 417.050. The McCarran–Ferguson Act is not applicable to a situation such as presented by this case with a claim sought to be arbitrated. All arise from a construction contract and relate to the quality and timeliness of the construction work and compliance with the terms of the construction contract.

We hold that the Court of Appeals was correct in determining that the trial court erred in finding that the term "insurance contracts" as set out in KRS 417.050 was intended to include the surety bond issued by Cumberland. Therefore, the order of the circuit court which stayed arbitration was incorrect.

The decision of the Court of Appeals is affirmed, and the order of the circuit court is dissolved.

All concur.