Denis Maricler **GOMES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–97–00444–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 2, 1999.

Rehearing Overruled Jan. 13, 2000.

John Withrow, Tennessee Colony, for appellants.

Alba Rosa Schou, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN and WITTIG.

## MAJORITY OPINION

MAURICE E. AMIDEI, Justice.

Denis Maricler Gomes appeals from her conviction for murder. Following the denial of her motion to suppress her confession, appellant pleaded *nolo contendere.* The trial court found appellant guilty and, in accordance with her plea-bargained agreement with the State, sentenced her to fifteen years imprisonment. We initially dismissed this appeal for lack of jurisdiction in our unpublished opinion dated March 4, 1999. On July 8, 1999, we issued our opinion on motion for rehearing withdrawing our initial opinion of March 4, 1999, and reinstating this appeal finding we have jurisdiction. This opinion is accordingly issued to review the trial court's ruling denying appellant's motion to suppress. Appellant asserts nine, interrelated points of trial court error, contending that: (1) her oral confession was inadmissible because it was involuntary and in violation of the Fourteenth Amendment; (2) her oral confession was involuntary under Texas law; (3) her post-arrest, videotaped confession should have been suppressed because it was obtained in violation of article 38.22 of the Texas Code of Criminal Procedure; (4) her post-arrest, videotaped confession should have been suppressed because it was obtained in violation of her *Miranda*[1] rights; (5) her post-arrest, videotaped confession should have been suppressed because the recording does not show that she waived any rights as re-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

quired by article 38.22 of the Texas Code of Criminal Procedure; (6) her videotaped confession should have been suppressed because it was the fruit of an illegal arrest; (7) her videotaped confession should have been suppressed because it was involuntary, in violation of the Fourteenth Amendment; (8) her videotaped confession should have suppressed because it was involuntary, in violation of Texas constitutional and statutory law; (9) the trial court should have excluded any oral statements related to her offer to take police to the location where the weapon was discarded. We affirm.

## I. BACKGROUND.

Appellant was an employee of Mexico Lindo, a nightclub located in Houston. On the evening of June 14, 1996, appellant met Fidel Marzoa (Marzoa, also known as El Cubano) at the nightclub and agreed to accept $200.00 from him in exchange for sexual favors. Appellant left the nightclub with Marzoa and went to his apartment. Appellant contended that Marzoa refused to pay her and violently raped her. Appellant freed herself from Marzoa and ran out of the apartment, returning to Mexico Lindo. Appellant stated that she feared Marzoa would return to the nightclub and kill her, so she stayed in the parking lot, hiding behind some bushes. Marzoa returned to Mexico Lindo. After exiting his vehicle, appellant approached Marzoa in the parking lot and fired two shots into Marzoa, killing him. Appellant then ran away from the scene and went to her home.

On July 3, 1996, at approximately 8:00 a.m., Houston Police Officers Martinez and Benevitas, respectively, went to appellant's home and asked her to accompany them to the police department to take a polygraph examination. Appellant agreed and was taken by the officers to the Houston Police Department. Appellant arrived at the polygraph office at 9:40 a.m., and Officer JoAnn Valverde, the polygraph examiner, introduced herself to appellant. Officer Valverde then escorted appellant to a waiting room and excused herself while she talked to Officers Martinez and Benevitas. After talking to the two investigating officers, Valverde returned to talk to appellant 45 minutes later. Valverde told appellant how the polygraph machine worked, and advised her that she did not have to take the polygraph. Valverde told appellant she was free to leave if she did not want to take the test, and that she was not under arrest. Valverde then left appellant alone for about an hour while she prepared the questions she was going to ask appellant. Valverde commenced the polygraph examination at 12.11 p.m., and concluded the test 20 to 25 minutes later. Valverde then told appellant she was not telling the truth, and asked appellant if she wanted to tell her why she did not pass the test. Appellant told Valverde that she was telling the truth, and the machine was lying. Valverde told appellant that when she finished the test, Valverde would know two things about appellant: she would know if appellant was a liar, and she would know if appellant shot El Cubano. At this point, Valverde testified that appellant became very emotional, and started crying. For the next two hours, Valverde talked to appellant about the events that occurred that night. Appellant told Valverde that Valverde, being a woman, would understand; that El Cubano raped her, she was scared, and that she had the right to defend herself. Valverde stated that she did not threaten appellant, force her to say anything, and that appellant's subsequent statements were made of her own free will. She then told Valverde how Marzoa raped her, and she ran out of his apartment afterwards. She told Valverde she was angry, and she went back to the club and waited in the bushes for Marzoa to come back. When appellant saw Marzoa getting out of a car, she shot him. She then told Valverde that she left and threw the gun along the way. Valverde paged Officer Martinez, and he came back to the station. Appellant told Officer Martinez about the offense, and he asked appellant if she would give him a statement. Appellant

agreed to give Martinez a video statement. Appellant begged Valverde to take appellant's children when she left to go with Martinez, and asked for Valverde's telephone number. Martinez told appellant he would get a telephone number later because Valverde did not give anyone her number. Valverde never gave appellant her rights warning, and testified that appellant was not in custody and was free to go at anytime. Valverde did not think the warnings were required under these circumstances.

At 4:00 p.m., Officer Martinez took appellant to the Homicide Division for further questioning. The police officers set up a video camera to record appellant's statement. Appellant was not informed that her statement would be recorded. Officer Martinez informed appellant of her *Miranda* rights when the video recording started. Appellant confirmed that she understood her rights. Appellant then gave her detailed statement to Officer Martinez concerning the shooting in the parking lot of Mexico Linda. Following her confession, appellant was charged with murder and taken to the Harris County Jail.

## II. STANDARD OF REVIEW.

Appellate courts should afford almost total deference to a trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). Appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* *Guzman* applies to appellate review of a motion to suppress a confession. *Hernandez v. State*, 957 S.W.2d 851, 852 (Tex. Crim.App.1998).

■ In this case, the trial court heard testimony from: (1) Officer Martinez, who took appellant's videotaped statement; (2) Officer JoAnn Valverde, who administered appellant's polygraph examination and in-terrogated her; and (3) appellant who testified through an interpreter. Appellant's testimony conflicted with the officers' testimony, and the trial court conducted its own examination of the witnesses on several occasions during the hearing on appellant's motion to suppress. Under these circumstances, where the police and the appellant provided conflicting testimony, resolution of the issues of (1) voluntariness of appellant's confession, (2) determination of appellant's custodial status when she made an oral confession to Officer Valverde, and (3) her right to remain silent, all involved an evaluation of credibility and demeanor of the witnesses because the trial court had to decide which testimony deserved more weight. In this case, our review will "afford almost total deference" to the trial court's determination of the "application of law to fact questions," also known as "mixed questions of law and fact," in accordance with *Guzman*, 955 S.W.2d at 89. We must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); *Blanks v. State*, 968 S.W.2d 414, 419 (Tex.App.-Texarkana 1998, pet. ref'd).

## III. DISCUSSION.

### A. Oral Confession.

■ In her first two points of error, Appellant contends that her oral confession made to Officer Valverde following the polygraph examination should have been suppressed because it was involuntary and inadmissible, obtained in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and Texas constitutional and statutory law. Appellant does not challenge the trial court's determination that appellant was not in custody when Valverde conducted appellant's polygraph examination and post-polygraph interview that resulted in her oral confession. Appellant claims that her will was overborne

by techniques used during the police interrogation. First, she claims that the police took advantage of her lack of education and lack of prior experience with the police. Second, she further asserts that she did not understand that she was free to leave, and her isolation at the police station for over an hour while Valverde prepared her questions, was "inherently coercive." Third, appellant contends she was tired, and had little to eat. Fourth, she contends Valverde "conveyed a sense of inevitability" to appellant telling her she would know from the test if appellant was lying, and that there would be no point in appellant hiding anything. Fifth, Valverde took advantage of appellant's perception that Valverde, being a woman, would sympathize with appellant's situation. Appellant asserts that Valverde was using a variation of the "false friend" technique used in *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). Sixth, Valverde never administered *Miranda* warnings which is relevant to the voluntariness of appellant's confession. Appellant argues that the combined effect of these factors created an inherently coercive atmosphere at the police station to make appellant admit a crime she otherwise would not have admitted. We disagree.

■ Involuntary confessions offend due process only when they flow from the improper conduct of law enforcement officials. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In determining whether police conduct is improper, the court should take into account police knowledge of a suspect's special weaknesses, including youth and low intelligence. *Gallegos v. Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex.Crim.App.1985). Whether a given confession was involuntary as a matter of fact (apart from the prophylactic rules imposed by *Miranda* ) must be decided by the totality of the circumstances on an individual basis. *Gallegos*, 82 S.Ct. at 1211; *Arm-*

*strong*, 718 S.W.2d at 693. Some relevant circumstances include the length of detention and interrogation, whether the defendant was permitted access to his family or an attorney, and the presence or absence of physical brutality. *Armstrong*, 718 S.W.2d at 693.

First, appellant contends her lack of experience with the police was an "inherent disadvantage" in dealing with the police. Appellant contends that no prior experience in dealing with the police was a factor deemed important in *Haynes v. State of Washington*, 373 U.S. 503, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963). We find nothing in *Haynes* to indicate that lack of prior experience in dealing with police was a factor in the case. *Haynes* held that the defendant's written confession was involuntary and inadmissible where it was made while the defendant, Haynes, was held by the police incommunicado for at least 16 hours. *Id.* Haynes was told by police officers that he could not communicate by telephone with his wife until after he made a written confession. *Id.* We find *Haynes* is factually dissimilar to this case and it is not applicable.

■ In this case, the bulk of the evidence shows that appellant had the basic reasoning skills necessary to understand her rights warnings, and readily responded to questioning by Valverde and Martinez. *See Penry v. State*, 903 S.W.2d 715, 745–46 (Tex.Crim.App.1995). While an appellant's limited intelligence is a factor to be considered, that alone does not mandate a finding of involuntariness of a confession as a matter of law. *See Smith v. State*, 779 S.W.2d 417, 428–429 (Tex.Crim.App. 1989). We will consider this factor along with the remaining factors in viewing the totality of the circumstances.

Second, appellant contends she did not realize she was free to leave and her physical isolation in the police station was another "inherently coercive" element. Nothing in the record indicates the police officers forced appellant to wait in the room while Valverde prepared her poly-

graph questions for appellant in another room. Appellant expressed a willingness to take the polygraph test and stay through the afternoon despite her complaint that she was "tired." The police did nothing that could be remotely characterized as coercive. There were no threats or promises made by the police, there was no violence, and appellant did not suffer from physical illness during the interviews. At most, appellant was inconvenienced by the police investigation, but we fail to see how her will was "overborne" by police coercion. *Armstrong*, 718 S.W.2d at 693. We will consider this factor along with the remaining factors in viewing the totality of the circumstances.

Third, appellant asserts she was "tired" when she came to take the polygraph examination. Appellant admits the officers did buy her some nachos and a V–8 drink on the way in, but contends there is no evidence that she was ever given anything else to eat. Appellant testified that she only had about five hours of sleep when the officers came to her house at 8:00 a.m. Appellant expressed a willingness to stay and take the polygraph, as well as go with Martinez at 4:00 p.m. and give him her video statement. She made no complaints to anyone about being tired to the point of not wanting to continue the investigation, nor did she complain about being hungry. We will consider this factor along with the remaining factors in viewing the totality of the circumstances.

Fourth, appellant contends Valverde coerced appellant's confession by conveying a sense of "inevitability" to appellant by telling appellant she would know from the polygraph test whether she was telling the truth. Valverde admits telling appellant that the test showed that appellant lied, and that she told appellant to tell the truth. A similar contention was made by the appellant in *Nenno v. State*, 970 S.W.2d 549 (Tex.Crim.App.1998). In *Nenno*, the polygraph examiner determined that the appellant had failed the test, and

appellant said: "I failed it, didn't I?" *Id.* at 555. Lt. Raney, the polygraph examiner, reminded appellant that he had told him prior to the examination that when the defendant finished the examination he would know whether or not the defendant was telling the truth.[2] *Id.* After testing the appellant in *Nenno,* Lt. Raney told the appellant he needed to tell him where the complainant was because he knew. *Id.* Lt. Raney asked for further details, and the appellant stated he had taken the complainant to his bedroom and attempted to have sex with her but could not; he then strangled her and had sex with her. *Id.* In *Nenno,* the appellant contended on appeal that the polygraph operator coerced his confession by commanding him to tell the police what happened. *Id.* at 558. The court of criminal appeals stated: "We do not, however, interpret the polygraph operator's comment that appellant would 'have to tell' the police what happened as meaning that he was legally obligated to do so. Instead, the polygraph operator's statement conveys that appellant was morally obligated to give the information. Such moral urging does not in itself render an accused's statement involuntary but is another circumstance to consider." *Id.* We will consider Valverde's "moral urging" as another factor in the totality of the circumstances.

■ Fifth, appellant contends Valverde took advantage of appellant's perception that Valverde, being a woman, would sympathize with appellant's situation. Appellant argues that Valverde was using a variation on the "false friend" technique used in *Spano*, 360 U.S. 315, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265 (1959). In *Spano*, a police officer acquaintance falsely told the defendant that the officer was in trouble and that, if the defendant did not cooperate, the officer could lose his job and be unable to support his family. *Id.* The *Spano* scenario essentially involves a kind of implied threat to a person perceived by the

2. In this case, Valverde told appellant sub-  stantially the same thing.

suspect as a friend. *Lane v. State*, 933 S.W.2d 504, 513 (Tex.Crim.App.1996). That scenario is completely different from a situation in which the officers merely attempt to facilitate communication by being friendly and supportive. *Id.* The fact that a friendly, supportive, low key, non-confrontational style may prove effective in eliciting incriminating statements does not mean that the style of questioning is improper or that the resulting statements are involuntary. *Id.* In this case, the record does not indicate any "implied threat to a person perceived by the suspect as a friend." *Spano* is factually dissimilar and not applicable to this case. As was the case in *Lane*, the record indicates that Valverde used a friendly, supportive, low key, nonconfrontational style in eliciting incriminating statements from appellant. *Id.* We will consider this factor along with the others.

■ Sixth, Valverde never administered *Miranda* warnings. Appellant was not in custody when Valverde gave appellant the polygraph examination and subsequent interview. Because Valverde's interview was noncustodial, *Miranda* warnings were not required. *See Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex.Crim.App.1996). Appellant cites *Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 1340, 18 L.Ed.2d 423 (1967) as authority for the presence or absence of warnings being relevant to the voluntariness inquiry. *Clewis* involved a *custodial* interrogation by police resulting in an involuntary written statement; the present case involves a *noncustodial* oral statement. *Clewis* is not authority for this proposition and we will not consider this factor in evaluating the totality of the circumstances.

Having considered all of the above factors together with all other circumstances, we find that appellant's will was not overborne. We must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996);

*Blanks v. State*, 968 S.W.2d 414, 419 (Tex. App.-Texarkana 1998, pet. ref'd). We find the trial court correctly determined that appellant's oral confession was voluntary, and we overrule point of error one.

In point two, appellant contends that appellant's oral confession to Valverde was in violation of the Texas due course of law provision in Tex. Const. art. I, § 19, and in violation of article 38.21, Texas Code of Criminal Procedure. Other than conclusions and generalizations, appellant does not explain why the Texas Constitution provides broader protection than the federal constitution or how that protection differs from the protection guaranteed by the federal constitution. Likewise, she does not explain how article 38.21 should be interpreted so as to eliminate the custodial requirements discussed above in this opinion for oral confessions in a noncustodial interrogation. Appellant cites no authority to support these conclusions and generalizations, and we decline to make appellant's arguments for her. Tex.R.App. P. 38.1(h); *Lane*, 933 S.W.2d at 511 & n. 7; *Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993). Appellant's point of error two is overruled.

**B. Videotaped Confession.**

In points three through eight, inclusive, appellant contends that her videotaped confession should have been suppressed because (a) it was obtained in violation of article 38.22 of the Texas Code of Criminal Procedure and Texas constitutional law, (b) it was obtained in violation of her *Miranda* rights, (c) it was obtained in violation of the Fourteenth Amendment, and (d) it was the fruit of an illegal arrest.

■ **1. Violation of Article 38.22 & *Miranda*.** In points three and four, appellant contends her post-arrest videotaped confession should have been suppressed because appellant did not make a knowing, intelligent waiver of the right to terminate the interrogation. A transcription was made of the oral portion of appellant's

videotaped statement and the challenged part of that statement states:

INV. MARTINEZ: You have the right to terminate this interview at any time you wish.

APPELLANT: How is that about "terminate" this interview?

INV. MARTINEZ: Uh ... Do you understand your rights? Can you read Spanish?

APPELLANT: Yes.

INV. MARTINEZ: Would read me number five, please? The last one.

APPELLANT: You have the right to terminate this interview at any time you wish.

INV. MARTINEZ: Do you understand that right?

APPELLANT: Uh-huh.

At the hearing on her motion to suppress the videotaped confession, appellant stated she understood she could stop talking to Martinez. She also acknowledged that Officer Martinez read her all of her rights and that she understood all of her rights. The trial court viewed the videotape, heard testimony from Officer Martinez concerning his reading of the warnings to appellant prior to taking her confession, and ordered the tape to be translated by a certified interpreter. Both parties stipulated to the accuracy of the translation of the confession, and the translated copy was made a part of the record. After a lengthy hearing, the trial court determined that the appellant understood her rights and that the confession was admissible. Our own review of the record reflects that appellant was somewhat confused about the right to terminate the interview, but after Officer Martinez explained the right and she read it to him in Spanish, she understood her rights. We find appellant knew her rights when she gave Martinez the video confession.

Appellant argues the recording does not accurately reflect that she knowingly and intelligently waived her rights. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2) (Vernon 1979 & Supp.1999). The court of criminal appeals has held that the oral confession statute does not require that a recorded statement contain an express verbal statement from an accused that he waives his rights prior to giving a statement. *Etheridge v. State*, 903 S.W.2d 1, 16–18 (Tex.Crim.App.1994), *cert. denied*, 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). Appellant in this case was informed of her rights during the recording, and she stated she understood those rights. The trial court, as the sole judge of the credibility of witnesses at a suppression hearing, can believe or disbelieve all or any of the witnesses. *Id.* at 18. *See also Dunn v. State*, 951 S.W.2d 478, 481 (Tex.Crim.App.1997) (trial court did not abuse its discretion in declining to suppress defendant's videotaped confession). The trial court did not abuse its discretion in finding appellant's videotaped confession was admissible. Appellant's points of error three and four are overruled.

**2. Lack of Waivers in Videotape.** In point five, appellant contends the videotape does not show that she verbally answered Martinez's questions asking her if she understood she had a right to remain silent and any statement can be used as evidence against her in court. The translation indicates "no verbal answer," but appellant acknowledged at the hearing she understood Martinez's questions. She also stated she understood her rights. As we have indicated above, *Etheridge* does not require that a recorded statement contain an express verbal statement from an accused that he waives his rights prior to giving a statement. 903 S.W.2d at 18. The trial court did not abuse its discretion in admitting the videotaped statement for these reasons. Appellant's point of error five is overruled.

**3. Warrantless Arrest.** In point six, appellant contends the video confession should have been suppressed because it was the fruit of an illegal arrest. Appel-

lant asserts that probable cause to arrest arose when appellant admitted the murder to Officer Valverde. Appellant argues that Valverde should have given appellant her rights warning immediately after she confessed. Appellant contends that failure to do so tainted the subsequent video confession with the illegality of the oral confession. Appellant did not raise this complaint in the trial court in her motions to suppress, nor did she make an objection on these grounds to the trial court during the hearing on the motion to suppress her confessions. Because this is the first time appellant has raised this argument, it is not preserved for our review. TEX.R.APP. P. 33.1(a); *Etheridge*, 903 S.W.2d at 16. We overrule appellant's point of error six.

**4. Voluntariness of the video confession.** In points of error seven and eight, appellant further contends her video confession should have been suppressed because it was involuntary, in violation of federal and state constitutions, and article 38.21, Texas Code of Criminal Procedure. Appellant incorporates by reference the "legal discussions of voluntariness in Points of Error One and Two" as reasons why the video confession is also involuntary. The only new matter appellant adds to this contention is that the officers failed to tell appellant they were recording her statement, and there was not a knowing and intelligent waiver or agreement by appellant to the recording. The recording in this case was made July 3, 1996, and article 38.22, § 3, Texas Code of Criminal Procedure, no longer required a person to be advised that her oral statement is being recorded. Prior to September 1, 1989, article 38.22, § 3(a)(2), required that an accused be told that a recording is being made prior to the statement but during the recording. This section was amended to delete this requirement effective September 1, 1989. *See Etheridge*, 903 S.W.2d at 16. This sub-point is without merit. The remainder of appellant's argument in her brief was discussed in this opinion under points one and two and will not be repeated here. Appellant cites no authority to support her conclusory argument that all the factors that made her oral confession involuntary also make the video confession involuntary. Appellant has not adequately briefed these points of error, and we decline to make her arguments for her. TEX.R.APP. P. 38.1(h); *Etheridge*, 903 S.W.2d at 12. Points of error seven and eight are overruled.

**C. Appellant's Admission Concerning her Discarding the Gun.**

In point nine, appellant contends that after appellant gave Martinez her video confession, she told Martinez she would take them to the place where she threw the gun. The prosecutor asked Martinez what he did at the conclusion of the video confession. Martinez said he called the D.A.'s office, and they told him to charge her. The prosecutor then asked Martinez: "[L]et's back up now. Then you probably processed her, booked her and put her in jail, put a hold on her?" Martinez then said, "yes," and then said they first made a trip to where the shooting had occurred because she said she would show them where the gun was. Martinez's mention of the trip to find the gun was a nonresponsive answer. Appellant argues that this matter is not admissible under article 38.22, section 3(c) (warnings not required for assertions of facts found to be true and which conduce to establish the guilt of the accused). Appellant did not raise this complaint in her motions to suppress, nor did she object to the evidence in the trial court at the hearing on her motion to suppress the confessions. Because this is the first time appellant has raised this argument, it is not preserved for our review. TEX.R.APP. P. 33.1(a); *Etheridge*, 903 S.W.2d at 16. We overrule appellant's point of error nine, and we affirm the judgment of the trial court.

DON WITTIG, Justice, dissenting.

We are presented with one of the law's greatest promises. The premise of this great promise, is the principle of both the

United States and Texas law, that government is limited. Within the principle of governmental limits, resides one of the greatest explicit promises any government can covenant with its people. Our law covenants no person may be compelled to witness or give evidence against themselves. No one may be intimidated or threatened to testify against themselves except they may only do so freely and self determinedly. This ultimate query, whether a statement to police is free and self determined, that is voluntary, is a legal question. *See Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). So today, we are duty bound to determine whether our law has kept this great promise.

During the early morning hours of June 14, 1996 appellant, for the promise of money, went to the home of the deceased, El Cubano, where she was raped and sodomized. Sometime later that day, El Cubano was killed when he returned to club Mexico Lindo. At 8:00 a.m., the day before Independence Day, 1996, two Houston police officers knocked on the door of the home of appellant, unannounced. Half asleep from her 2:00 a.m. arrival home, this twenty-four year old young Hispanic mother was requested to accompany police to the station for follow-up questioning. Afforded only a fourth grade education, illiterate in English, and a foreign national, appellant avers she was not informed she was free to refuse this invitation. Appellant had only arrived home a few hours before, and had not eaten. The police did graciously feed her nachos and V–8 juice, her last and only reported meal for the day long questioning. Appellant's three young children were left behind with a hastily arranged baby sitter.

Appellant was transported by an unmarked police vehicle to police headquarters for a polygraph and questioning. Police, unbeknownst to appellant, had previously scheduled the 9:00 a.m. polygraph session. Around 9:40, Officer Valverde, the polygraph operator, briefly spoke with appellant then left her incommunicado somewhere between one and one half hours and three hours. Although the first polygraph test was administered between 12:11 and 12:57 p.m., appellant remained at the downtown police headquarters until 3:30 or 4:00 p.m. without a meal, drink or using the bathroom. Valverde stated appellant was given such *opportunity* but there is no positive testimony or circumstantial evidence that sustenance was provided until after a *third* confession was obtained later that evening.

Valverde, who interviewed appellant in her native Spanish, testified she knew by 10:30 a.m. that appellant had killed El Cubano. She already knew appellant to be the only and prime suspect, that a witness placed appellant with the deceased hours before the homicide and that appellant had tried to sell a pistol two or three days after the shooting. The officer freely admitted she never warned appellant in any manner. Valverde gave the singular impression and even testified that a Houston Police Officer, who happens to be a polygraph operator, is not in charge of a suspect under her direction, and therefore does not (ever) have to advise a suspect of their Constitutional or statutory rights. Valverde candidly admitted her express purpose was to obtain not only the truth but also a confession. (Homicide had already focused their investigation on appellant before this day.) Eventually, appellant, trusting her new confidant, Valverde, made her first "confession." Valverde successfully employed the "new friend" technique of interrogation. Even after appellant "confessed to murder" appellant was "free to go" claimed this government witness. Appellant understandably stated she was not free to go. Officer Martinez however, gave a more candid response that after the polygraph confession appellant was not free to go.

After the second polygraph of the day, and multiple prior statements from appellant, the police had a dead body and the

person in their building who just admitted she did the killing; a witness had placed her with the deceased, appellant had tried to get rid of the gun, and there were no other suspects. The trial judge duly noted the availability of judges in the very police station where the polygraph operation occurred, 61 Reisner, near downtown Houston. Nearby was 1400 Lubbock, or 49 San Jacinto where magistrates are also available 24 hours a day for issuing warrants or warnings.

According to the only believable witness,[1] Valverde, she told appellant, again without warnings, to repeat her confession to officer Martinez. *Miranda* warnings were not necessary according to police and the majority, because this confessed "killer" was free to go, not in custody. At this juncture, the young foreigner, had been the social invitee of the State for some *nine* hours She had yet to be afforded any warnings.

According to Valverde, appellant did indicate she would go with Martinez for yet further interrogation at the Mykawa police station "but she needed to take care of the children first." Martinez said "fine." The record shows this attempt to either leave or check on her children was denied appellant. Appellant even indicated she gave Martinez some jewelry, her ring, to let her check on her children. Martinez never allowed the promised check on appellant's young children or any other outside contact.

After the second confession, appellant was then taken by police, to the distant Mykawa street police station, for further interrogation. The requirement to take appellant before a magistrate was ignored.

Now after 5:00 in the evening, without sustenance to eat or drink, crying with concern for her child, appellant was yet to be afforded a single affirmative protection of our laws.[2] The majority incorrectly refuses to consider this illegal arrest under the totality of circumstances test, even though the trial judge himself was clearly disturbed by this misconduct.

During the late afternoon, going to Mykawa, police refused to discuss her situation with her. Finally there, she was given warnings, after a fashion. She was twice asked if she understood her right to remain silent. Twice, she did not respond, indicating neither understanding nor waiver. Twice she was asked whether she understood her statement could be used against her. Again she did not respond with any indication of comprehension or waiver. When appellant specifically asked about her right to *terminate* the questioning, Officer Martinez either purposefully or inadvertently misstated appellant's right to *terminate*. He equivocated "*Interview,* here .. uh ... this *interview,* which we are here ... you and I, talking ..." As the majority focused, appellant was made to read back in Spanish, the same term "*terminate*" in the same language that she indicated *she did not understand.* Police then obtained, in appellant's tenth hour with them, a third confession, the last one videotaped and the only one with even an attempt at proper warnings.

The appellant's version was more alarming. She says police did not tell her she would have to take a polygraph. She maintains she was initially isolated incommunicado at the police station for over three hours. She was afraid of the poly-

1. A very frustrated trial judge, asked the prosecutor if the prosecution would vouch for any of the State's witnesses. "Only Valverde," was the particularly candid response of the State. Clearly Martinez and appellant strayed from known facts and the agreed upon transcript of the third confession of July 3 rd. Even the opinions and conclusions of the State's only credible witness, Valverde, were hardly unbiased, clear and forthright.

Much of her testimony was mere conclusory opinions, without stated factual support.

2. The promise of the law against self-incrimination has by this hour has been repeatedly violated. While our more recent law tells us to see if the government even once keeps its word, fulfills its promise, the repeated deceit must nevertheless still be weighed in the totality of the circumstances.

graph and believed it would electrocute her. She states she would be jailed, even if innocent, if she did not admit to killing El Cubano. She always averred she felt captive to the day long interrogations. Appellant claims not only did she not receive food, water or bathroom break, she was refused that opportunity. She thought she had no right to refuse interrogation, felt under arrest, and was intimidated not only with treats of jail but a harangue of "You are the one! You are the one! Even if you are not, you are going to jail!" She was never allowed to check on her children, was not told where she was to be taken, and under the circumstances thought she had no right to refuse to talk with investigators. "They told me I had to. They forced me!"

### Analysis

Relevant circumstances to determine if a defendant's will has been overborne have included length of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality. *See Armstrong v. State* 718 S.W.2d 686, 693 (Tex.Crim.App.1985) quoting 1 W. LaFave & J. Israel, Criminal Procedure, Sec. 6.2 at p. 445 (West 1984); *Pace v. State*, 986 S.W.2d 740, 747 (Tex.App.-El Paso 1999, pet. ref'd) A defendant's characteristics and status, as well as the conduct of the police, are important concerns. *Turner v. Pennsylvania*, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949); *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); "To meet constitutional standards, a confession must be both voluntary and taken in compliance with *Miranda* and Article 38.22 of the Code of Criminal Procedure." *See Pace*, 986 S.W.2d at 747.

Clearly the questioning of appellant was interrogation. "Interrogation connotes a 'calculated' practice on the part of a government official in an attempt to evoke an incriminating response." *See Cooks v.*

*State*, 844 S.W.2d 697, 734 (Tex.Crim.App. 1992); *McCrory v. State*, 643 S.W.2d 725, 734 (Tex.Crim.App.1983). Further, interrogation is "questioning initiated by law enforcement officers." *Wicker v. State*, 740 S.W.2d 779, 785 (Tex.Crim.App.1987) One pertinent inquiry here is the custodial nature of the questioning. The mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation. *See Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Crim.App. 1983). Our sister court was confronted with a similar situation which started as non-custodial interrogation but evolved into custodial interrogation. "At the time he made oral statements which implicated himself, the inquiry turned into a custodial interrogation. This is because at that point and time there was probable cause to arrest Blanks, and he was certainly a focus of the investigation." *See Blanks v. State*, 968 S.W.2d 414, 419 (Tex.App.—Texarkana 1998, pet. ref'd). So too here, at a minimum, with the investigation focused on the only suspect, the appellant, the gun evidence, the witnesses' placement of appellant, the dead body coupled with appellant's admission, unequivocally ended any police pretense of non-custodial interrogation. *Dowthitt v. State* 931 S.W.2d 244 (Tex.Crim.App.1996).

In Texas a person is arrested when under restraint or taken into custody by an officer. Tex.Code Crim. Proc. Ann. Art. 15.22. "An arrest is complete when a person's liberty or movement is restricted or restrained." *See Livingston v. State* 739 S.W.2d 311, 327 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). Yet at this point (at least by mid-day) both Valverde and Martinez continued custodial interrogation without interruption, warrant or warning. Valverde obtained a second polygraph. Sobbing on the floor, scared and crying for contact with her children, the police persisted. Still no warnings were given. A

second confession was given Martinez before he physically removed appellant to Mykawa, bypassing both the magistrate in the same police building at 61 Reisner, and Texas law.

Finally, sometime in the evening, at the Mykawa station, an infirmed attempt at warnings was made. No written warnings were ever signed by appellant. She did not respond to the first two *Miranda* warnings though they were repeated twice. When she asked what "terminate the interview" meant, the police eschewed the query "terminate" and instead focused on "the interview".[3] Our situation is in stark contrast to *Dunn v. State,* 951 S.W.2d 478 (Tex.Crim.App.1997) where the officer carefully explained the terms to that appellant. *Id.* at 481.

As noted, appellant has provided ample evidence her confessions were involuntary, whether custodial or not. Much of the strongest evidence of involuntariness came via appellant's uncontroverted testimony or from law enforcement officers themselves.

The majority choose to overlook much of this evidence in its opinion. Rather, it isolates six factors summarized by appellant as evidence her confessions were involuntary. Each is, in turn, parsed, minimized or dismissed.

For instance, though the majority appears to acknowledge a person's characteristics and status are important concerns in determining voluntariness of a confession, it fails to say anything about appellant's characteristics other than she had "limited intelligence." The majority failed to give any meaningful consideration to these *undisputed* characteristics of appellant:

— she is a foreign national, who speaks no English;

— she had no prior experience with the police, at least in this country;

— she had only a fourth grade education;

— she worked in a bar as a prostitute to support her young children;

— she did not understand the law;

— she was so unsophisticated as to the interrogation procedure such that she feared the polygraph she was hooked up to might electrocute her.

In discussing the coerciveness factor, citing that the there was no violence or threats or promises made by police, the majority holds, "the police did nothing that could remotely be characterized as coercive." In so asserting the majority, again, completely ignores contrary evidence of (among other things):

— appellant's hours of incommunicado isolation in a police station, miles from home, away from her dependent young children;

— the repeated failure of the police to give appellant *Miranda* warnings or take her to a magistrate, despite clear probable cause;

— the manipulation and deceit of the police, for the admitted purpose "obtain a confession."

The majority also explicitly refuses to consider the absence of *Miranda* warnings as a factor in determining the voluntariness of appellant's confessions. The reason: the absence of warnings is relevant only to a *custodial* inquiry. The proposition that a suspect must have been in a technical state of "custody" for a court to consider whether the absence of *Miranda* warnings was a factor contributing to the involuntariness of a confession is incorrect. "Custody" or not, the concrete difference between appellant receiving no warnings and her being informed of and understanding her right to remain silent—i.e., *not* confess—should not be ignored, especially under the facts of this case. Without proper warnings it is significantly more

---

**3.** The police played hide the ball, much like the carnival shell game placing a pea or small stone under one of three shells, then deceptively moving the shell around with the duplicitous language of deception.

likely appellant's confession was involuntary.

The majority acknowledges that the law dictates the relevant factors be viewed not individually, but by the totality of the circumstances, and ends the discussion of each factor with the promise, "we will consider this factor along with the other factors in viewing the totality of the circumstances." However, at the end of the discussion, without a single word of analysis as to how these factors, taken together, had a cumulative effect on appellant, the majority suddenly shuts down its analytic engine, and summarily holds, "[h]aving considered all the [ ] factors together with all other circumstances, we find appellant's will was not overborne." [4]

No isolated piece of evidence presented may demand a holding that appellant's confessions were involuntary. But over the day long ordeal, the isolation, intimidation, manipulation, the police movement of her, hunger, the police disregard of the law to take her before a magistrate, the police refusal to warn, the police refusal to explain she could terminate the interrogation, the police refusal to allow family communication and the day long interrogation wore on this young, uneducated mother. Because the myriad factors, taken as a whole, are so overwhelming, appellant's confessions were not proven to be voluntary.

The trial court abused his discretion in denying the motion to suppress. The State failed to meet its burden to show appellant's statements were "freely and voluntarily made without compulsion or persuasion." *See* TEX.CODE CRIM. PROC. art. 38.21; *Jordan v. State,* 939 S.W.2d 222, 223 (Tex.App.-Houston [1 st Dist.] 1997, no pet.).

Similarly, under the totality of the circumstances appellant did not knowingly, intelligently and voluntarily waive her *Miranda* rights in violation of State and Federal Constitutional standards as well as TEX CODE CRIM. PROC. art 38.22, § 3a. once custodial interrogation began.

We are then charged to reverse this conviction unless we determine beyond a reasonable doubt the above errors did not contribute to the conviction or punishment. *See* TEX .R.APP. PROC. 44.2(a). None of appellant's self-incriminating statements could properly be used against her.[5] Undoubtedly, their use created or contributed to the State's leverage in the plea bargain process. If the statements had been admitted at a trial, they could only have contributed to a guilty verdict and increased the likelihood of a more severe punishment. The error therefore manifestly contributed to appellant's conviction and punishment beyond a reasonable doubt and the conviction should be reversed and the case remanded for a new trial. On the day before Independence Day, 1996, the law breached its solemn covenant.

---

4. This is tantamount to dismissing the Chinese water torture as no more than a series of water droplets on the forehead. Surely no single "drop of water" caused appellant's will to be overborne.

5. So long as it may be concluded that evidence the accused maintains should have

been suppressed pursuant to a motion to suppress would in any measure inculpate the accused, that evidence has been "used" against him or her in securing the conviction. *Gonzales v. State,* 966 S.W.2d 521, 523 (Tex. Crim.App.1998); *Kraft v. State,* 762 S.W.2d 612, 615 (Tex.Crim.App.1988).