COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 THOMAS RAY BRADEN, JR.,
  
                            
 Appellant,
  
 v.
  
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-11-00034-CR
  
 Appeal from the
  
 97th
 District Court 
  
 of Montague
 County, Texas 
  
 (TC# 2008-0000041M-CR)
 
  
 
 


 

                                                                  O
P I N I O N

Appellant, Thomas
Ray Braden, Jr., appeals his conviction for Sexual Assault of a Child.  Appellant’s sole point of error presented is
that the trial court erred by admitting two written statements into evidence
signed by Appellant.  He alleges that
these statements were obtained in violation of the Due Process Clause of the 14th
Amendment.  We affirm.[1]

                                                PROCEDURAL
BACKGROUND

Appellant was
indicted on one count of Sexual Assault of a Child.  He entered a plea of not guilty to the charge
on November 16, 2010.  On November 17,
2010, a hearing was held outside the presence of the jury regarding Appellant’s
Motion to Suppress Evidence, which the court denied.[2]
 Following a three-day jury trial,
Appellant was found guilty.  The jury assessed
his punishment at twenty-five (25) years in the Institutional Division of the
Texas Department of Criminal Justice and a fine of $2,500.  Appellant timely filed a notice of appeal.

FACTUAL
BACKGROUND

On or about
November 27, 2007, a student reported to a high school counselor that her
friend, a fourteen-year old student hereafter referred to as “B.B.,” had been
inappropriately touched by Appellant, B.B.’s step-father.  The counselor spoke to B.B., who advised that
she had been touched inappropriately by Appellant.  Subsequently B.B. and her mother, Mrs. Braden,
met with Officer Lance Provost of the Saint Jo Police Department.  Officer Provost took B.B. and Mrs. Braden to
the Patsy’s House Children’s Advocacy Center in Bowie, Texas, where B.B. was
interviewed by an investigator with CPS.

Following that interview,
Officer Provost and Mrs. Braden went to the residence where Mrs. Braden and
Appellant lived so that Officer Provost could meet with Appellant.  Officer Provost testified that he met with Appellant
and Mrs. Braden at their residence.  Officer
Provost informed Appellant that he was not under arrest and requested that
Appellant sign a form acknowledging the same, which he did.  Officer Provost testified that Appellant did
not appear intoxicated.  According to the
testimony of Officer Provost, he asked Appellant if he knew why he was there,
to which Appellant responded that he had accidentally touched B.B. between her
legs while wrestling.  Officer Provost
then asked Appellant if he had ever digitally penetrated B.B.’s vagina and Appellant
responded that he had done so on ten or more occasions.

Following this,
Officer Provost asked Appellant to prepare an “apology letter,” which Appellant
agreed to do.  Because of his limited
ability to read and write, Officer Provost wrote the letter for Appellant.  Officer Provost testified that he transcribed
what Appellant told him to write and that Appellant signed the letter himself.  Officer Provost also testified that he read
the letter back to Appellant as it was written and that Appellant signed it
only after he agreed with its contents.  Officer
Provost then took a formal statement from Appellant, in a “Question and Answer”
format, and testified that the statement was given freely and voluntarily, and
that Appellant did not appear to be under the influence of an intoxicant.  On cross-examination, Officer Provost
testified that he intended on using any statement he obtained from Appellant
and that he was gathering evidence to be used against Appellant.

At the
suppression hearing, Mrs. Braden testified that she woke Appellant up to inform
him of the officer’s arrival and testified that Appellant was “extremely
intoxicated.”  Mrs. Braden testified that
when she left for work that morning there was a 30-pack of beer in the
refrigerator, that when she and Officer Provost arrived at the residence there
were thirty beer cans in the trash, and that Appellant smelled of beer when she
woke him up to advise him of Officer Provost’s presence.  However, she also testified that she did not
witness him drink any beer during the day.  Mrs. Braden testified that Officer Provost
asked her to leave the room, an event which Officer Provost testified that he
did not recall.  Mrs. Braden further
testified that Appellant only had a fourth-grade reading level.

The Appellant
did not testify at the suppression hearing.

At the conclusion
of the suppression hearing, the trial court noted that all the documents
presented bore Appellant’s signature, that Appellant was not in custody or
under arrest at the time that he made these statements, that the statements
were not custodial statements, that Appellant was not given admonishments of
constitutional and statutory rights and privileges, that no improper
inducements were offered or given to Appellant prior to, during, or after the
statements were given, that the written statements are admissible, and that
Appellant’s objections are overruled.  The
trial court also prepared written findings of fact relating the above.

DISCUSSION

Appellant’s sole
point of error asserts that the trial court erred by admitting into evidence
two written statements:  the apology
letter, and the formal statement, because they were obtained in violation of
the Due Process Clause of the 14th Amendment as they were not given “freely”
and “voluntarily.”  Appellant contends
that the statements were not given freely and voluntarily inasmuch as he was
intoxicated and was being subjected to coercive and unreasonable police conduct.  Because the written statements were not a
product of custodial interrogation and were given freely and voluntarily, we conclude
that the trial court properly denied Appellant’s motion to suppress.

Appellant argues
that there are five specific facts which support his contention that the first
statement, the apology letter, was “coerced:” 
(1) no Miranda warnings were
provided; (2) Appellant was “extremely intoxicated;” (3) Appellant could not
write the statements himself; (4) no independent person witnessed the process
regarding the statements; and (5) Appellant was told that the purpose of the
statement was an “apology letter” to be used to help the victim heal.  Appellant argues that once the apology letter
was obtained using coercive tactics the second statement, the formal “question
and answer” statement, is fruit of the poisonous tree and/or was also coerced.

The Texas Code of
Criminal Procedure article 38.22 prohibits the admission of an accused’s
statement resulting from a custodial interrogation unless the accused was
advised of his Miranda rights and
voluntarily waived those rights.  Tex.Code Crim.Proc.Ann. art. 38.22, §§ 2(a),
2(b), 3(a)(2)(West 2005); see Miranda v.
Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); see also Herrera v. State, 241 S.W.3d
520, 526 (Tex.Crim.App. 2007)(“Our construction of ‘custody’ for purposes of
Article 38.22 is consistent with the meaning of ‘custody’ for purposes of Miranda.”).  However, the warnings required by Article
38.22 and Miranda only apply when a
suspect is in custody.  See Herrera, 241 S.W.3d at 526.

A person is “in
custody” if, under the circumstances, a reasonable person would believe his
freedom of movement was restrained to the degree associated with a formal
arrest.  Stansbury v. California, 511 U.S. 318, 322-24, 114 S.Ct. 1526, 1528-30,
128 L.Ed.2d 293 (1994); Dowthitt v. State,
931 S.W.2d 244, 254 (Tex.Crim.App. 1996).[3]
 We determine custody based on objective
circumstances, and any subjective intent of law enforcement officers or the
person being questioned are not controlling.  Stansbury,
511 U.S. at 323, 114 S.Ct. at 1529.

            Because
questions of custody present a mixed question of law and fact, we afford almost
total deference to a trial judge’s “custody” determination when the questions
of historical fact turn on credibility and demeanor, although when the
questions of historical fact do not turn on credibility and demeanor, we review
a trial judge’s “custody” determination de
novo.  See Herrera, 241 S.W.3d at 526-27; see also Jeffley v. State, 38 S.W.3d 847, 853 (Tex.App.--Houston [14th
Dist.] 2001, pet. ref’d).  The defendant,
not the State, carries the initial burden of establishing that a statement was
the product of custodial interrogation.  Herrera, 241 S.W.3d at 526.  A custody inquiry also includes an examination
of all of the objective circumstances surrounding the questioning.  Dowthitt,
931 S.W.2d at 255.  Being the focus of
the investigation does not equate to being in custody.  Meek v.
State, 790 S.W.2d 618, 621 (Tex.Crim.App. 1990).

            Here,
considering the totality of the circumstances, several factors tend to show
that Appellant was not in custody when he made the statements.  The record indicates that Appellant was not
under arrest or being interrogated at a station house, but was being questioned
at his own residence.  Further, Officer Provost
testified that he informed Appellant that he was not under arrest, and
requested that Appellant sign a form acknowledging the same[4],
which he did.  While at his residence,
Appellant was not restrained in any way or forbidden from leaving the residence.
 Based on a review of the record,
Appellant never asked to terminate the interview, never asked to leave the
residence, and never asked to speak to anyone.

            After
considering all the circumstances regarding the interview, we agree with the
trial court that a reasonable person in Appellant’s situation would not feel
restrained to the degree associated with a formal arrest or “custody.”  Furthermore, according almost total deference
to the trial court’s determination regarding Mrs. Braden and Officer Provost’s
credibility and demeanor as we are required to do, it is clear that the trial
court did not abuse its discretion by finding that Appellant was not in custody
at the time he gave his written statement.  Because Appellant was not in custody, the
provisions of Article 38.22 do not apply to the statements and no Miranda warning was required.  See Ford
vs. State, 2009 WL 160922, *6 (Tex.App.--Fort Worth Jan. 22, 2009, pet. ref’d)(memo.
op., not designated for publication).

            Turning
to Appellant’s argument that he was intoxicated, an examination of the record
as a whole does not support his claim that he was intoxicated at the time he
made the written statements. 
Furthermore, even if he was intoxicated at the time, that fact alone
does not serve to make the confession and written statements involuntary.  See
Nichols v. State, 754 S.W.2d 185, 190-91 (Tex.Crim.App. 1988); Garcia v. State, 919 S.W.2d 370, 387 (Tex.Crim.App.
1994) (citing Nichols).  The trial court is the sole judge of the
weight and credibility of the evidence presented at a hearing to suppress
evidence and, absent a clear abuse of discretion, the trial court’s finding may
not be disturbed.  Garcia, 919 S.W.2d at 387.

            The
only evidence presented in support of Appellant’s alleged intoxication is the
testimony of Mrs. Braden, who did not testify that she witnessed Appellant
drinking, but made her assumption based on the presence of empty beer cans and the
smell of beer.  Officer Provost testified
that Appellant did not appear intoxicated.  While the trial court did not make a specific finding
of fact regarding Appellant’s intoxication, the record does not support
Appellant being intoxicated.  As a
result, the trial court did not abuse its discretion in finding that the
written statements were given voluntarily.[5]

            Appellant
next argues that he was unable to write out the statements himself.  The Texas Code of Criminal Procedure article
38.22(1) defines a “written statement” as:

[A]
statement signed by the accused or a statement made by the accused in his own
handwriting or, if the accused is unable to write, a statement bearing his
mark, when the mark has been witnessed by a person other than a peace officer.

 

Tex.Code Crim.Proc.Ann.
art. 38.22(1).

In
overruling Appellant’s motion to suppress, the trial court specifically
addressed this issue, holding that each of the statements bore Appellant’s
signature and that “[t]he Court finds that this is a signature, not a mark.  The Court further finds, based on the
testimony, that the defendant is able to read and write at a fourth-grade
level.”  Several Texas courts have held
that a suspect may be uneducated and illiterate and yet still understand the
nature of the rights he is waiving and voluntarily give a confession.  See Martinez
v. State, 131 S.W.3d 22, 35 (Tex.App.--San Antonio 2003, no pet.); Peacock v. State, 819 S.W.2d 233, 235
(Tex.App.--Austin 1991, no pet.); Perales
v. State, 2008 WL 4531659, *4 (Tex.App.--Fort Worth Oct. 9, 2008, pet. dism’d,
untimely filed)(memo. op., not designated for publication).  The trial court did not abuse its discretion
in rejecting this argument.

Appellant’s
fourth assertion is that no independent person witnessed the process of
obtaining the statements.  Appellant
cites no case law or statute in support of this argument.  Neither the Texas Code of Criminal Procedure
or Texas case law imposes such a requirement, absent the situation where a
suspect is unable to write his own signature and a mark is substituted.  See Tex.Code Crim.Proc.Ann. art. 38.22(1).  As that is not the case here, where Appellant signed
his own name, this argument is without merit.

Appellant’s
final issue is that the apology letter was coerced.  He argues that “[i]t is obvious that Officer
Provost was playing on the heart strings of an extremely intoxicated father.”  The trial court, in making its findings
denying the motion to suppress, specifically found that no improper inducements
were offered or given to Appellant prior to, during, or after the statements
were given.  The use of tactics which
capitalize on an accused’s “moral sense of right and wrong” or comprise “moral
urging” does not in itself render an accused’s statement involuntary, but is
another circumstance to consider in the totality of the circumstances in
examining the voluntariness of a statement.  See Nenno
v. State, 970 S.W.2d 549, 558 (Tex.Crim.App. 1998); Gomes v. State, 9 S.W.3d 373, 378 (Tex.App.--Houston [14th Dist.] 1999,
pet. ref’d)(same).

In
reviewing the totality of the circumstances, we conclude that the trial court
did not abuse its discretion by finding that Appellant’s will was not overborne
and there was no coercion in obtaining either the first or second written
statements.  Given our holding that the
first written statement was obtained properly, the second written statement is
not “fruit of the poisonous tree.”  The
trial court did not abuse its discretion by finding that the written statements
were given voluntarily. Accordingly, we overrule Appellant’s sole point of
error.

CONCLUSION

Having overruled Appellant’s only point of
error, we affirm the trial court’s judgment.

 

 

 

March
28, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, Rivera, and Antcliff, JJ.

 

(Do
Not Publish)











[1] This case was transferred from the Second Court of
Appeals to this Court pursuant to a docket equalization order entered by the
Texas Supreme Court.   See Tex.Gov’t Code Ann. § 73.001 (West
2005).  We have applied precedent of the
Fort Worth Court of Appeals.  See Tex.R.App.P. 41.3.





[2]
The trial court issued findings regarding Appellant’s motion both on the record
and supported with separate written findings regarding the written
statements.  See Tex.Code Crim.Proc.Ann.
art. 38.22, § 6 (West 2005).





[3]
As the Court of Criminal Appeals noted in Dowthitt, Texas courts have identified
four general situations which may constitute custody:  (1) when the suspect is physically deprived of
his freedom of action in a significant way; (2) when a law-enforcement official
tells a suspect he cannot leave; (3) when law-enforcement officers create a
situation that would lead a reasonable person to believe that his freedom of
movement has been significantly restricted; and (4) if there is probable cause
to arrest and law-enforcement officials do not tell the suspect that he may
leave.  Dowthitt, 931 S.W.2d at 255, citing
Shiflet v. State, 732 S.W.2d 622, 629
(Tex.Crim.App. 1985).  The restraint upon
freedom in the first three situations must be equivalent with that associated
with an arrest as opposed to an investigative detention.  See
Dowthitt, 931 S.W.2d at 255.  In the fourth situation, the officer’s
knowledge of probable cause must be manifested to the suspect, and such
manifestation, considered in the totality of the circumstances, must lead a
reasonable person to believe he is not free to leave.  Id.

 





[4]
An “Acknowledgment of Not Under Arrest” form, in which Appellant acknowledged
that he understood that he was not in custody and was free to leave at any
time.  See, e.g. Phillips vs. State, 2004 WL 362253, *1 (Tex.App.--Fort
Worth Feb. 26, 2004, no. pet.)(not designated for publication)(noting existence
and purpose of this form).





[5]
The issues of voluntariness and intoxication were presented to the jury in the
jury charge, which the jury received and considered before finding Appellant
guilty.