Martinez v. SOT



NUMBER 13-00-227-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________


EDWARDO RIVERA MARTINEZ, Appellant,


v.


THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 36th District Court of San Patricio County, Texas.


____________________________________________________________________



O P I N I O N

Before Justices Dorsey, Hinojosa, and Rodriguez

Opinion by Justice Hinojosa


A jury found appellant, Edwardo Rivera Martinez, guilty of the offenses of aggravated sexual assault of a child and
indecency with a child and assessed his punishment at thirty years imprisonment for the aggravated sexual assault and ten
years imprisonment for the indecency with a child. The victim was appellant's eight-year-old daughter. By six points of
error, appellant contends: (1) the trial court erred when it responded to a question from the jury because the response was
an improper comment on the weight of the evidence and the request was not based on a disagreement of the evidence
among the jurors; (2) he received ineffective assistance of counsel; and (3) the trial court erred by admitting an involuntary
confession into evidence. We affirm. 

A. Background


At approximately 5:00 a.m. on August 2, 1999, Melinda Guzman saw appellant with two of his daughters on a foot bridge
which crosses a canal about a block from appellant's house. The victim was on appellant's lap, his pants were down, and
the victim's "panties were off one leg." Guzman went to the bridge and took the two girls away from appellant. Appellant
followed Guzman and the girls and went into Guzman's mother's carport/garage. Guzman later found the victim and
appellant in the garage; appellant was sitting on a toolbox and "had his fingers in between the little girl's private part."
Guzman then took the two girls to their grandmother's house, which was two blocks away.

B. Jury Deliberation


In his first and second points of error, appellant contends the trial court erred when it responded to a question from the jury
because the response was an improper comment on the weight of the evidence and the request was not based on a
disagreement of the evidence among the jurors.

During its deliberations, the jury sent out a note which stated: "No. 1, we need to know if when [the victim] was asked if
her dad had penetrated her private, if she gave an answer of yes. Also, her specific response." The trial court judge
attached the following testimony of the victim to the jury's question: 

Q: Now, you know what a private part is, huh?

A: Yes.

Q: Did anyone ever touch you in your private parts?

A: Yes.

Q: Who touched you?

A: My dad.

Q: How did he touch you? What did he do?

A: He got his hand -- 

Q: His hand?

A: (Shaking head.)

Q: What did he do with his hand?

A: He put it in my private part.

Q: He did?

A: (Shaking head.)

Q: Did that happen on the bridge?

A: No.

Q: Did -- 

A: Yes.



The judge then asked if anyone objected to giving the jury this testimony. Appellant's counsel objected and requested that:

the court just instruct the jury that, "I cannot respond to your question, because the question assumes that [the victim] was
asked if she was penetrated, and she was never asked that." So rather than saying she was never asked that, or -- I would
just -- I would just at this point request that the Court respond that, "I cannot -- I cannot give you any answer to your question."



The court overruled the objection and asked if counsel had any objection to the form of the response. Appellant's counsel
said he did not.

Appellant contends the jury's note does not show any disagreement among the jurors concerning the victim's testimony. See
Tex. Code Crim. Proc. Ann. art. 36.28 (Vernon 1981) (if jury disagrees as to statement of any witness, they may have read
to them from the court reporter's notes that part of such witness's testimony or the particular point in dispute, and no other). 
After reviewing the record, we conclude that this complaint is not the same as appellant's objection at trial. Thus, this
contention is not preserved for our review. See Martinez v. State, 867 S.W.2d 30, 40 (Tex. Crim. App. 1993).

Appellant further contends: 

in the excerpt sent to the jury by the trial court from the testimony of [the victim], [the victim] was asked whether she was
touched in her private part, how she was touched, and what appellant did with his hand. Nowhere in the excerpt sent the
jury by the trial court from the testimony from [the victim] does the word "penetration" appear. As appellant objected to
the trial court, the jury was incorrectly assuming [the victim] was asked whether she was "penetrated." By responding to
the jury's question, the trial court in effect commented that the state's asking whether [the victim] was touched in her private
part, how she was touched, and what appellant did with his hand was evidence on the issue of penetration which gave
undue weight to such portion of the state's examination of [the victim]. In responding to the jury's question, the trial court
in effect commented that the state asked [the victim] whether she was penetrated and that she said yes which gave undue
weight to such portion of the state's examination of [the victim].



According to article 38.05 of the Texas Code of Criminal Procedure, the trial judge shall not make any remark calculated to
convey his opinion of the case to the jury at any stage of the proceeding prior to the return of the verdict. See Tex. Code
Crim. Proc. Ann. art. 38.05 (Vernon 1979). For remarks by a judge to constitute a violation of article 38.05, a reviewing
court must find a benefit to the State or an injury to the appellant. Selman v. State, 807 S.W.2d 310, 312 (Tex. Crim. App.
1991).

"Penetration" is defined as "the act or process of passing into or through, to enter by overcoming resistance." See Merriam
Webster's Collegiate Dictionary 858-59 (10th ed. 1996). When asked what her father did with his hand, the victim testified
"he put it in my private part." While this eight-year-old victim did not use the word "penetrate," we conclude that her
statement is the equivalent of the word "penetrate." Therefore, sending the excerpt to the jury, even though the word
"penetrate" was not contained within, was not an improper comment on the weight of the evidence and did not benefit the
State or injure appellant. Appellant's first and second points of error are overruled.

C. Ineffective Assistance of Counsel


By his third and fourth points of error, appellant contends that if his trial counsel failed to adequately object to the trial
court's submission of the victim's testimony to the jury, then he was denied effective assistance of counsel.

Claims of ineffective assistance are analyzed under the rule set forth in Strickland v. Washington, 466 U.S. 668 (1984), and
adopted by the Texas courts in Hernandez v. State, 726 S.W.2d 53, 56 (Tex. Crim. App. 1986). The Strickland standard
applies to ineffective assistance of counsel at both the guilt-innocence and punishment phases of the proceedings.
Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. App. 1999). The Strickland test is the benchmark for judging whether
counsel's conduct has so undermined the proper functioning of the adversarial process that the trial cannot be relied on as
having produced a reliable result. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing McFarland v.
State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992)). The appellant must first show that trial counsel's performance was
not reasonably effective, falling below an objective standard of reasonableness under the prevailing professional norms.
Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812-13. A showing of deficiency requires a demonstration that trial
counsel made errors so serious that he was not functioning as the counsel guaranteed a defendant under the Sixth
Amendment. Strickland, 466 U.S. at 687. We must presume that counsel is better positioned than the appellate court to
judge the pragmatism of the particular case, and that counsel made all significant decisions in the exercise of reasonable
professional judgment. Young v. State, 991 S.W.2d 835, 837 (Tex. Crim. App. 1999); Delrio v. State, 840 S.W.2d 443,
447 (Tex. Crim. App. 1992). There is also a strong presumption that trial counsel's conduct was reasonable and constitutes
sound trial strategy. Strickland, 466 U.S. at 689; McFarland, 845 S.W.2d at 843. The "reasonably effective assistance"
standard does not mean errorless counsel. Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991); Hernandez v.
State, 799 S.W.2d 507, 508 (Tex. App.-Corpus Christi 1991, pet. ref'd).



If the appellant can demonstrate deficient assistance under the first part of the Strickland test, he must then show that there
is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been
different. Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812; Washington v. State, 771 S.W.2d 537, 545 (Tex. Crim.
App. 1989). "A reasonable probability" means "a probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812; Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989).
The prejudice element requires a showing that trial counsel's errors were so serious as to deprive the defendant of a fair trial
-- one whose result is reliable. Strickland, 466 U.S. at 687. The totality of the representation is evaluated from counsel's
perspective at trial, not his isolated acts or omissions in hindsight. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim.
App. 1990); Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). 

The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each
case. Ex parte Scott, 581 S.W.2d 181, 182 (Tex. Crim. App. 1979); Stone v. State, 17 S.W.3d 348, 350 (Tex. App.-Corpus
Christi 2000, pet. ref'd). The appellant must prove his claim of ineffective assistance of counsel by a preponderance of the
evidence. Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). Furthermore, he must show ineffective
assistance firmly rooted in the record. Jackson v. State, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994). We may not
speculate as to the reasons behind trial counsel's actions nor should we try to second guess trial counsel's tactical decisions
which do not fall below the objective standard of reasonableness. Young, 991 S.W.2d at 837-38; Solis v. State, 792 S.W.2d
95, 100 (Tex. Crim. App. 1990); Stone, 17 S.W.3d at 350.

While counsel may not have objected on the basis that no disagreement existed between the jurors to warrant submitting
the excerpt to them, the fact is that he did object and we cannot evaluate the correctness of this particular objection in
hindsight. See Ex parte Welborn, 785 S.W.2d at 393.

After reviewing the entire record, we cannot say that appellant received ineffective assistance of counsel at trial. Appellant's
trial counsel actively participated in voir dire, diligently protected the interests of his client by making objections
concerning evidence and testimony throughout the trial, conducted lengthy and detailed cross-examinations, and
aggressively presented appellant's case before the jury. Accordingly, appellant's third and fourth points of error are
overruled.

D. Involuntary Statement


In his fifth and sixth points of error, appellant contends the trial court erred by admitting his involuntary confession into
evidence. Appellant asserts that because of his mental impairment, (1) he did not understand the warnings given to him and
did not make a knowing, voluntary, and intelligent waiver of his rights.

In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Accordingly, the judge
may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. See State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). This is so because it is the trial court that observes first-hand the
demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record. Garcia
v. State, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). Furthermore, when the trial court fails to file findings of fact, we
view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings
of fact that support its ruling as long as those findings are supported by the record. Carmouche v. State, 10 S.W.3d 323,
328 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). If the trial judge's decision is
correct on any theory of law applicable to the case, the decision will be sustained. Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990).

According to the Guzman court:

The appellate courts should afford almost total deference to a trial court's determination of the historical facts that the
record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The
appellate court should afford the same amount of deference to trial courts' rulings on "application of law to fact questions,"
also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor. The appellate courts may review de novo "mixed question of law and fact" not falling within this
category.



Guzman, 955 S.W.2d at 89. Guzman applies to appellate review of a motion to suppress a confession. Hernandez v. State,
957 S.W.2d 851, 852 (Tex. Crim. App. 1998); Gomes v. State, 9 S.W.3d 373, 376 (Tex. App.-Houston [14th Dist.] 1999,
pet. ref'd). The determination of whether a statement is voluntary is a mixed question of law and fact. Tex. Code Crim.
Proc. Ann. art. 38.22, § 6 (Vernon 1979); see Garcia, 15 S.W.3d at 535.

Substantive constitutional law prohibits the government from using an involuntary confession against an accused with the
test for voluntariness being whether the confession is the product "of an essentially free and unconstrained choice by its
maker." State v. Terrazas, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999) (citing Schneckloth v. Bustamonte, 412 U.S. 218,
225 (1973); Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)). Whether the confession is true or false is
irrelevant to a voluntariness determination because it is the methods used to extract an involuntary confession that offend
constitutional principles. Terrazas, 4 S.W.3d at 723 (citing Lego v. Twomey, 404 U.S. 477 (1972)). In determining
whether police conduct is improper, the court should take into account police knowledge of a suspect's special weaknesses,
including youth and low intelligence. Gallegos v. Colorado, 370 U.S. 49, 53-55 (1962); Gomes, 9 S.W.3d at 377. A court
looks at the totality of the circumstances to determine whether a confession is involuntary or coerced. See Arizona v.
Fulminante, 499 U.S. 279, 285-86 (1991); Green v. State, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). The State has the
burden under the Fifth and Fourteenth Amendments of proving by a preponderance of the evidence that the confession was
voluntary. Lego, 404 U.S. at 489. 

San Patricio County Sheriff's Deputy Johnny Segovia testified at the suppression hearing. Segovia testified that he met
with appellant on August 13, 1999, when appellant was arrested pursuant to a warrant. Before Segovia spoke with
appellant, he read, explained, and advised him of his constitutional rights, which appellant indicated that he understood and
he initialed and signed a waiver of rights form. At that time, appellant agreed to waive his rights and make a statement.
Segovia testified that he did not coerce, threaten, or promise appellant anything in exchange for his statement. Segovia did
not deny appellant any basic necessities, and appellant did not request that the interview cease. Segovia testified that
appellant "was very talkative . . . . [and] he said he wanted to get this behind him, and he was sorry for what he did."
Segovia said that appellant was very responsive to his questions and they talked about appellant's family and deceased wife. 
Segovia testified that after appellant made his statement, he took "all the questions and answers and placed them into a
statement format." Segovia said that because appellant indicated that he did not read or write the English language, he had
Diana Rosalez, a notary/secretary, read the statement "word for word" to appellant in English and Spanish. Rosalez asked
appellant if he understood his statement, and if it was true and correct. Appellant signed the statement in the presence of
Rosalez and Segovia.

Appellant testified at the suppression hearing that he did not know that he had the right not to talk to Officer Segovia or the
right to have an attorney. He admitted that Segovia had read his rights to him and told him to initial them, but he claimed
that he did not understand them. Appellant also claimed that he did not know his rights before he signed the statement. He
said he had told Segovia that he did not understand "what he's telling me on the paper." Appellant also testified that
Segovia had told him "that [he would] try to get me probation . . . if I signed the papers." He claimed that Segovia did not
read the statement to him before he was told to sign it.

The court also reviewed a psychological evaluation performed by Joseph Horvat, a court-appointed psychologist, who
evaluated appellant on November 23, 1999 and December 13, 1999. Appellant was referred to Horvat "for a screening of
his psychological and intellectual dynamics . . . in order to assess his competency to stand trial on charges of aggravated
sexual assault and indecency with a child." Horvat concluded that appellant was capable of standing trial. Horvat noted:

While the presence of mental retardation most certainly limits [appellant's] capacity for comprehension, he does understand
the charges brought against him, as well as the basic premise of right versus wrong. His various difficulties make it
tremendously hard for [him] to engage in appropriate behavior; however, he does understand what is being asked of him.

 

The trial court denied appellant's motion to suppress his statement. The court stated: 

At this point in time obviously - I have to assume that Doctor Horvat followed the psychological profile in the model that a
psychologist should follow, and should have advised Mr. Rivera - excuse me - Mr. Martinez that the psychological
evaluation was not privileged. And since the warnings that are given by the psychologist - are supposed to be given by the
psychologist - are somewhat similar to those given by a deputy or a law enforcement officer obtaining information, and the
doctor decided to go forward with the hearing, I'm not taken by his statement that he did not understand his warnings. . . .
Find no evidence of coercion, therefore, I'll not suppress the evidence. 

 

The court did not file any findings of fact and conclusions of law.

In this case, the bulk of the evidence shows that appellant had the basic reasoning skills necessary to understand his rights,
and readily responded to questioning by Segovia. See Penry v. State, 903 S.W.2d 715, 745-46 (Tex. Crim. App.
1995);Gomes, 9 S.W.3d at 377. While an appellant's limited intelligence is a factor to be considered, that alone does not
mandate a finding of involuntariness of a confession as a matter of law. See Smith v. State, 779 S.W.2d 417, 428-29 (Tex.
Crim. App. 1989); Gomes, 9 S.W.3d at 377. 

We conclude that the trial court did not abuse its discretion in finding that the totality of the circumstances surrounding
appellant's statement did not indicate that it was involuntarily given. The trial court heard the testimony of Segovia and
appellant and evidently believed the testimony of Segovia. Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993)
(trial court within its authority to believe one witness and disbelieve another). The record supports the trial court's findings
that appellant freely and voluntarily gave his statement. Accordingly, the trial court did not abuse its discretion by
overruling the motion to suppress. Appellant's fifth and sixth points of error are overruled.





The judgment of the trial court is affirmed.





FEDERICO G. HINOJOSA

Justice





Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this

the 12th day of July, 2001.

1. James Horvat, a court-appointed psychologist, testified that appellant tested in the mildly mentally-retarded range and in
the bottom one percent of the population.