Affirmed and Memorandum Opinion filed August 7, 2007








Affirmed and Memorandum Opinion filed August 7, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00066-CR

_______________

 

THOMAS JUSTIN THOMAS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 122nd District Court

Galveston County, Texas

Trial Court Cause No.  04CR0351

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury convicted
appellant Thomas Justin Thomas of capital murder and the trial court sentenced
him to life imprisonment.  On appeal he contends the trial court erred by
admitting his taped confessions because they were not voluntarily given as
required by statute and the United  States Constitution.  He further alleges
that the mandatory life sentence provision of the capital murder sentencing
scheme is unconstitutional.  We affirm.

 








I.  Factual and Procedural Background

On
February 10, 2004, appellant and three of his friends went to the residence of
his grandparents, William and Pearl Clement.  After breaking down the door,
appellant, either alone or in the company of one of his friends, bludgeoned his
grandparents with a tire iron; William was later pronounced dead at the scene,
while Pearl died at the hospital.  Appellant and his friends were stopped
shortly thereafter in the early morning hours of February 11, 2004, because the
van they were in matched the description of the vehicle used in an unrelated
nearby robbery and because the driver of the van violated several traffic
laws.  When the officer who stopped them approached the van, he discovered a
rifle and several other suspicious items in the van.  In response to questions
regarding the items, appellant stated that they belonged to his grandparents
and that the van they were driving belonged to his mother.  Because appellant
was unable to provide a reasonable explanation for having his grandparents= belongings B including his grandmother=s purse and his grandfather=s wallet B in his possession, the officer
radioed dispatch and asked that a call be placed to the Clements= home.  When dispatch was unable to
contact the Clements, the officer became concerned that appellant and his
friends had burglarized the Clement home.  He radioed for another unit as
backup, and was soon notified that units were already at the Clement home where
Athere were two subjects down.@  He then arrested appellant and his
friends.








After
appellant and his friends were taken to police headquarters, evidence was
collected from both the van and their clothing.  Appellant and his friends were
separated and questioned by several officers, including a Texas Ranger called
in to assist with the interviews.  Appellant was the third  suspect to be
interviewed.  Texas Ranger Joe Haralson met with appellant around 6:30 a.m.,
warned appellant of his rights at 6:44 a.m., and began tape-recording his
statement at 7:16 a.m. on February 11, 2004.  In his first statement, appellant
confessed to robbing and murdering his grandparents, but stated that he only
did so at the suggestion of one of his friends; he also said that he had beat
his grandparents at the urging of his friend because he was afraid his friend
would kill him if he refused.  He provided several specific details of the
crime.   The recording of appellant=s first statement concluded at 7:45
a.m., and appellant was escorted back to his cell.

After
police interviewed another suspect, an officer observed appellant Acrying and upset@ in his cell.  At appellant=s request, officers interviewed him
again at 8:44 a.m.  During this tape-recorded statement, appellant stated he
was on some unspecified medication and Adidn=t feel like@ himself.  He expressed remorse for
killing his grandparents, and then gave another detailed description of the
killings, which differed fairly significantly from his first statement.  In
this statement, he indicated that one of his friends had been pressuring him to
kill his parents and steal their van for several weeks prior to February 10. 
Because appellant refused, this friend then began suggesting appellant kill his
grandparents.  On the night of his grandparents= murders, appellant and his friends
attempted to go to a strip club, but could not get in because  they did not
have enough money.  According to appellant=s second statement, his friend again
suggested they kill members of appellant=s family to get  money.  In this
statement, appellant said he went into his grandparents= house alone, instead of in the
company of his friend.  According to appellant, while he was beating his
grandparents, his head told him to stop, but he was unable to control himself. 
This tape-recorded statement concluded at 9:16 a.m.








Appellant
was indicted for the capital murder of his grandparents on May 5, 2004;
however, the State did not seek the death penalty.  During appellant=s trial, the trial court conducted a Jackson-Denno[1]
hearing regarding the voluntariness of his confessions.  At the conclusion of
the hearing, the trial court found that appellant=s custodial statements were made
voluntarily.  Appellant=s tape-recorded statements were admitted into evidence and
played for the jury.  In the court=s charge, the jury was instructed
that it could consider appellant=s confessions only  if it determined,
beyond a reasonable doubt, that appellant Aknowingly, intelligently[,] and
voluntarily waived [his] rights.@  Appellant was convicted by the jury
as charged in the indictment.  The trial court sentenced appellant to life
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  After a motion for new trial was denied on January 27, 2006, this
appeal timely followed.

III.  Issues Presented

Appellant
presents four issues for our review.  In his first two issues, appellant
contends the trial court erred in admitting his taped confessions because they
were not given voluntarily as required by the United States Constitution and
the Texas Code of Criminal Procedure.  Appellant asserts in his third and
fourth issues that the automatic life-sentencing provision of the Texas Penal
Code is unconstitutional under both the United States and Texas constitutions.

IV.  Discussion

A.        Voluntariness of
Confessions

In his
first two issues, appellant complains that his taped confessions were not
voluntarily given, in violation of the United States Constitution and Texas
statutory requirements.  Specifically, appellant contends that he was pressured
by police into giving his confessions and that he was unable to resist this
pressure due to the combined effect of lack of sleep, his emotional distress,
his youth, and his affliction with learning disabilities, attention-deficit
disorder, and depression.








An
accused must give his confession voluntarily before it can be used against him.
See Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995) (en banc)
(per curiam).  Under federal due process principles, a statement is involuntary
if the defendant was offered inducements of such a nature or coerced to such a
degree that the inducements or coercion B not his own free will B produced the statement.  Colorado
v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 521-22 (1986); Gomes v.
State, 9 S.W.3d 373, 377 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  Article 38.21 of the Code of
Criminal Procedure requires that the statement be Afreely and voluntarily made without
compulsion or persuasion.@  Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005).  In
determining the question of voluntariness, a court should consider the totality
of circumstances under which the statement was obtained.  Creager v. State,
952 S.W.2d 852, 855 (Tex. Crim. App. 1997) (en banc).  The ultimate issue is
whether the appellant=s will was overborne.  Id. at 856.  

Once the
accused contests the admission of his statement on the ground of Avoluntariness,@ the due process guarantee and
article 38.22, section 6 require the trial court to hold a hearing on the
admissibility of the statement outside the presence of the jury. Alvarado v.
State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (en banc) (citing Jackson
v. Denno, 378 U.S. 368, 380, 84 S.Ct. 1774, 1783 (1964)); see also Tex. Code Crim. Proc. Ann. art. 38.22, ' 6 (Vernon 2005).  At this hearing,
the State must prove voluntariness by a preponderance of the evidence.  Alvarado,
912 S.W.2d at 211.  The trial court is the sole judge of the weight and
credibility of the evidence, and the court=s findings may not be disturbed on
appeal absent a clear abuse of discretion. Id.  When reviewing a
suppression hearing ruling, we view the evidence in the light most favorable to
the trial court=s ruling.  See State v. Terrazas, 4 S.W.3d 720, 725
(Tex. Crim. App. 1999) (en banc); Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996) (en banc).








            Here,
appellant contends his statement was involuntary due to the following Apressure@: (1) the nature of custodial
interrogation; (2) the fact that appellant was questioned before being
arraigned; (3) appellant=s Apoor grasp of what he was really giving up by waiving rights
and giving self-incriminating statements@; (4) appellant=s lack of knowledge that the death
penalty was a possible punishment; and (5) the officers= failure to seek appointment of an
attorney  because they Aknew or should have known@ he would be unable to afford an
attorney on his own and an indigent capital murder suspect should have an
attorney appointed Aas soon as practical after charges are filed.@[2]  Appellant also identifies several
purported personal weaknesses that allegedly made him less able  than the
normal person  to cope with this sort of pressure: (1) his lack of sleep; (2)
his emotional distress; (3) his youth; and (4) his afflictions with learning
disabilities, attention deficit-hyperactivity disorder (AADHD@), and depression.  Appellant
contends that these factors, taken together, render his confessions
involuntary.  We disagree.

Because
the voluntariness of appellant=s confessions was contested, the trial court conducted a Jackson-Denno
hearing.  At the hearing, Ranger Haralson first testified for the State.  Then
appellant called his mother, Julie Thomas, and Dr. Michael Fuller, a
court-appointed psychiatrist who had evaluated appellant for a possible
insanity plea.  Appellant did not testify at this hearing.  After the Jackson-Denno
hearing, the trial court dictated the following findings into the record:

I find that the procedure used to begin with did comply with Article
[38.]22 of the Code of Criminal Procedure, that there are indications of
statements being made under voluntary conditions, and that, in fact, the
statement was voluntarily made.

Again, reviewing the procedure that [Ranger] Haralson used, I find that
it did comply with the statute.  The rights were given individually to Mr.
Thomas.  After each one, he acknowledged understanding.  He was given the
waiver which he read out loud on both of the statements, the first interview
and in the second interview.  He did acknowledge understanding of each right,
did state that he was waiving those rights.

He never requested an attorney.  He never asked the interview to
cease.  When given the opportunity, he gave a free narrative account.  And only
questions were asked after he had ceased his narrative account.








At certain points when questions were being asked, Mr. Thomas did
correct Ranger Haralson as far as the factual misstatements.  He acknowledged
that he understood that a waiver means to give up rights.  Then he asked the
question, Awhere do I begin@
before beginning the statement the second time.

* * *

He was oriented as to time, place, and person.  He acknowledged who he
was, where he was.  He signed, dated and timed the waiver of rights in State=s Exhibit 70.  When asked to explain what Acoerce@ means, he said
he did not understand.  When Ranger Haralson explained it to him, he then said,
ANo there was no coercion.  Everyone has been nice to
me.@

Reviewing the testimony of Dr. Fuller regarding the diagnosis of ADHD,
he said it was probably not B it would
probably not significantly alter his ability to understand Miranda rights.

So for the record, again, I find that the statement
was made under voluntary conditions and was B
freely and voluntarily [sic] the rights were waived and the statement was
voluntarily made.  I find that it is admissible.

 








These
findings are supported by the record.  Haralson testified that he advised
appellant of his rights three times and that appellant acknowledged his rights
and waived them three times, twice in writing.  According to Haralson,
appellant never indicated he wanted an attorney, was not denied any basic
necessities, was not promised anything in exchange for his statement, and was
not coerced in any way.[3]  Haralson
explained that appellant corrected him several times when he was questioning
appellant and stated that appellant appeared Aalert and knew what he was saying. .
. . [and] did not . . . appear to be intoxicated or under the influence of
either fatigue or any kind of narcotics.@  Finally, although both appellant=s mother and Dr. Fuller indicated
that appellant had an IQ within the low-average range and suffered from ADHD
and fairly significant dyslexia, Fuller testified that appellant=s ADHD and his other Acognitive problems@ would probably not have a
significant impact on his ability to understand his rights.  

Viewing
this evidence in the light most favorable to the trial court=s ruling, we conclude that the State
met its burden to establish, by a preponderance of the evidence, that appellant=s confession was voluntary.  See
Alvarado, 912 S.W.2d at 211.  The trial court was aware of most of the
factors appellant lists in his brief as rendering his confessions involuntary,
yet concluded   the confessions were made voluntarily.  See id. (noting
that the trial court is the sole judge of the weight and credibility of the
evidence).    Appellant did not testify, and there is nothing to indicate that
any government actor offered inducements of such a nature or coerced him to
such a degree that the inducements or coercion, instead of  his own free will,
produced his statements.  See Connelly, 479 U.S. at 167, 107 S.Ct. at
522; Gomes, 9 S.W .3d at 377.  Nor, after reviewing the totality of
circumstances, do we discern any indication that appellant=s will was Aoverborne@ during the course of his
statements.  See Creager, 952 S.W.2d at 855-56.  Finally, the trial
court included the voluntariness issue in its charge to the jury.[4] 
Under these circumstances, we cannot say that the trial court abused its
discretion in admitting appellant=s taped confessions, and we therefore
overrule appellant=s first and second issues.








C.        Constitutionality of
Automatic Life Sentence Provision

In
appellant=s third and fourth issues, he asserts that the automatic life sentence
mandated by section 12.31(a) of the Texas Penal Code violates the Texas and
United States constitutions.[5]  Under Texas
law, an automatic life sentence is mandatory when the State does not seek the
imposition of the death penalty for a capital offense.  See Tex. Penal Code Ann. ' 12.31(a) (Vernon 2005); see also Tex. Code Crim. Proc. Ann. art. 37.071, ' 1 (Vernon 2006).[6] 
It is well-established that the automatic life sentencing provisions of the
Texas capital sentencing framework do not violate the United States or Texas
constitutions. See, e.g., Cienfuegos v. State, 113 S.W.3d
481, 495-96 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (determining that imposing
automatic life sentence on defendant convicted as a party to capital murder
does not offend constitution); Barnes v. State, 56 S.W.3d 221, 239 (Tex.
App.CFort Worth 2001, pet. ref=d) (holding imposition of automatic
life sentence on juvenile defendant does not violate United States or Texas
Constitutions); Laird v. State, 933 S.W.2d 707, 714 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d) (same). 








Despite
this uncontroverted authority, appellant contends that the United States
Supreme Court=s decision in Roper v. Simmons provides a basis to revisit this
well-settled issue.  543 U.S. 551, 125 S.Ct. 1183 (2005).  We disagree.  In Roper,
the Supreme Court determined that the eighth and fourteenth amendments prohibit
the imposition of the death penalty on offenders who were under the age
of eighteen when their crimes were committed.  id. at 578, 125 S.Ct. at
1200.  But 

[t]he penalty of death differs from all other forms of
criminal punishment, not in degree but in kind. It is unique in its total
irrevocability. It is unique in its rejection of rehabilitation of the convict
as a basic purpose of criminal justice. And it is unique, finally, in its
absolute renunciation of all that is embodied in our concept of humanity.

 

Harmelin v. Michigan, 501 U.S. 957, 995-96, 111 S.Ct.
2680, 2702 (1991) (quoting Furman v. Georgia, 408 U.S. 238, 306, 92
S.Ct. 2726, 2760 (1972) (Stewart, J., concurring)).  In this case, the State
did not seek the death penalty, apparently conceding punishment questions such
as mitigation that are attendant to the death penalty.[7] 
See Prater v. State, 903 S.W.2d 57, 59 (Tex. App.CFort Worth 1995, no pet.).  Moreover,
the Simmons Court affirmed the seventeen-year-old offender=s sentence of life imprisonment
without parole.  Simmons, 543 U.S. at 560, 125 S.Ct. at 1189.   Thus, to
the extent Simmons has any bearing on this issue at all, it suggests
that life imprisonment of a seventeen-year-old capital offender, such as
appellant, does not contravene the constitutional prohibitions against cruel
and unusual punishment.  Accordingly, we overrule appellant=s third and fourth issues.








III.  Conclusion

Having
overruled each of appellant=s issues, we affirm the judgment of the trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed
August 7, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Jackson v. Denno, 378 U.S. 368, 380, 84 S.Ct.
1774, 1783 (1964).





[2]  Nothing in the record reflects that the officers
involved in questioning appellant had any knowledge that appellant would be
unable to afford an attorney, and appellant was advised of his right to
appointed counsel if he were unable to afford an attorney prior to questioning.





[3]  Through cross-examination, appellant=s trial counsel implied that Haralson intimidated
appellant during the approximately forty minutes between appellant signing the
first waiver and the beginning of his recorded statement; however, Haralson
provided a reasonable explanation for the lapse of time.  First, Haralson
stated that during this time, he explained appellant=s rights to him, obtained appellant=s signed waiver, and told appellant that the officers
were aware that he had been a passenger in a vehicle that contained property
stolen from two people who had been murdered.  Second, Haralson also indicated
that each time he interviews someone, whether the interview is ultimately
recorded or not, he conducts a preliminary interview prior to initiating the
official statement.  Finally, Haralson denied telling appellant that either of
the two previously interviewed suspects had implicated appellant in their
statements.





[4]  Appellant states in his brief, AThe jury charge did not address any aspect of the
admissibility of the statements other than the warnings required by Tex. Code 
Crim. Proc. art. 38.22 and Miranda v. Arizona, 384 U.S. 486, 86 S.Ct.
1602 (1966), so there is no implicit jury finding as to other aspects of
voluntariness.@  However, he does not elaborate as to what Aother aspects@ of
voluntariness he refers, and the trial court charged the jury on voluntariness
as follows:

If, however, you find beyond a reasonable doubt that the aforementioned
warning was given the Defendant prior to his having made such statement, . . .
before you may consider such statement as evidence in this case, you must find
from the evidence beyond a reasonable doubt that prior to making such
statement, . . . the Defendant knowingly, intelligently[,] and voluntarily
waived the rights . . . , and unless you so find, or if you have a
reasonable doubt thereof, you will not consider the statement or confession for
any purpose whatsoever or any evidence obtained as a result of the statement,
if any.

(Emphasis added.)





[5]  Both appellant and the State note that appellant did
not preserve error on these issues by objecting at trial.  Although he did not
object on these grounds, appellant preserved error on both these issues by filing
a motion for new trial, which was denied by the trial court. See Tex. R. App. P. 33.1(a)   In addition,
questions challenging the constitutionality of a statute upon which a defendant=s conviction or sentence are based should be addressed
by appellate courts even when raised for the first time on appeal.  See,
e.g., Holberg v. State, 38 S.W.3d 137, 139 n.7 (Tex. Crim. App.
2000) (addressing appellant=s establishment
clause argument regarding the constitutionality of the death penalty even
though appellant did not object on this basis at trial). 





[6]  These statutes have both been amended to require a
life sentence without the possibility of parole.  See Tex. Penal Code Ann. ' 12.31(a) (Vernon 2005); Tex. Code Crim. Proc. Ann. art. 37.071, ' 1 (Vernon 2006).  Appellant acknowledges that because
Alife without parole@
did not exist in Texas at the time of his offense, he will be eligible for
parole. As the United States Supreme Court has already rejected the argument
that it is Acruel and unusual@ to
impose a mandatory sentence of life imprisonment without the possibility of
parole, see Harmelin v. Michigan, 501 U.S. 957, 996, 111 S.Ct. 2680,
2702 (1991), a life sentence including eligibility for parole is even
less likely to offend constitutional strictures.  Indeed, the Harmelin 
majority specifically pointed out that a life sentence Acannot be compared with death.@  Id.





[7]  The State did not seek the death penalty even though
appellant=s offense was committed prior to the Supreme Court=s decision in Roper v. Simmons.  Prior to Simmons,
a seventeen-year-old offender was eligible for the death penalty.  See Tex. Penal Code Ann. ' 8.07(b), (c) (Vernon Supp. 2006); see also
Dewberry v. State, 4 S.W.3d 735, 739 (Tex. Crim. App. 1999) (en banc)
(affirming seventeen-year-old offender=s
death sentence).