COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THOMAS RAY BRADEN, JR., | § | No. 08-11-00034-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 97th District Court |
| THE STATE OF TEXAS, | § | of Montague County, Texas |
| Appellee. | § | (TC# 2008-0000041M-CR) |
| | § | |

**O P I N I O N**

Appellant, Thomas Ray Braden, Jr., appeals his conviction for Sexual Assault of a Child.
Appellant's sole point of error presented is that the trial court erred by admitting two written
statements into evidence signed by Appellant. He alleges that these statements were obtained in
violation of the Due Process Clause of the 14th Amendment. We affirm.[1]

**PROCEDURAL BACKGROUND**

Appellant was indicted on one count of Sexual Assault of a Child. He entered a plea of
not guilty to the charge on November 16, 2010. On November 17, 2010, a hearing was held
outside the presence of the jury regarding Appellant's Motion to Suppress Evidence, which the
court denied.[2] Following a three-day jury trial, Appellant was found guilty. The jury assessed
his punishment at twenty-five (25) years in the Institutional Division of the Texas Department of
Criminal Justice and a fine of $2,500. Appellant timely filed a notice of appeal.

---

[1] This case was transferred from the Second Court of Appeals to this Court pursuant to a docket equalization order
entered by the Texas Supreme Court. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005). We have applied
precedent of the Fort Worth Court of Appeals. *See* TEX.R.APP.P. 41.3.
[2] The trial court issued findings regarding Appellant's motion both on the record and supported with separate written
findings regarding the written statements. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (West 2005).

# FACTUAL BACKGROUND

On or about November 27, 2007, a student reported to a high school counselor that her friend, a fourteen-year old student hereafter referred to as "B.B.," had been inappropriately touched by Appellant, B.B.'s step-father. The counselor spoke to B.B., who advised that she had been touched inappropriately by Appellant. Subsequently B.B. and her mother, Mrs. Braden, met with Officer Lance Provost of the Saint Jo Police Department. Officer Provost took B.B. and Mrs. Braden to the Patsy's House Children's Advocacy Center in Bowie, Texas, where B.B. was interviewed by an investigator with CPS.

Following that interview, Officer Provost and Mrs. Braden went to the residence where Mrs. Braden and Appellant lived so that Officer Provost could meet with Appellant. Officer Provost testified that he met with Appellant and Mrs. Braden at their residence. Officer Provost informed Appellant that he was not under arrest and requested that Appellant sign a form acknowledging the same, which he did. Officer Provost testified that Appellant did not appear intoxicated. According to the testimony of Officer Provost, he asked Appellant if he knew why he was there, to which Appellant responded that he had accidentally touched B.B. between her legs while wrestling. Officer Provost then asked Appellant if he had ever digitally penetrated B.B.'s vagina and Appellant responded that he had done so on ten or more occasions.

Following this, Officer Provost asked Appellant to prepare an "apology letter," which Appellant agreed to do. Because of his limited ability to read and write, Officer Provost wrote the letter for Appellant. Officer Provost testified that he transcribed what Appellant told him to write and that Appellant signed the letter himself. Officer Provost also testified that he read the letter back to Appellant as it was written and that Appellant signed it only after he agreed with its

2

contents.   Officer Provost then took a formal statement from Appellant, in a "Question and Answer" format, and testified that the statement was given freely and voluntarily, and that Appellant did not appear to be under the influence of an intoxicant.   On cross-examination, Officer Provost testified that he intended on using any statement he obtained from Appellant and that he was gathering evidence to be used against Appellant.

At the suppression hearing, Mrs. Braden testified that she woke Appellant up to inform him of the officer's arrival and testified that Appellant was "extremely intoxicated."   Mrs. Braden testified that when she left for work that morning there was a 30-pack of beer in the refrigerator, that when she and Officer Provost arrived at the residence there were thirty beer cans in the trash, and that Appellant smelled of beer when she woke him up to advise him of Officer Provost's presence.   However, she also testified that she did not witness him drink any beer during the day. Mrs. Braden testified that Officer Provost asked her to leave the room, an event which Officer Provost testified that he did not recall.   Mrs. Braden further testified that Appellant only had a fourth-grade reading level.

The Appellant did not testify at the suppression hearing.

At the conclusion of the suppression hearing, the trial court noted that all the documents presented bore Appellant's signature, that Appellant was not in custody or under arrest at the time that he made these statements, that the statements were not custodial statements, that Appellant was not given admonishments of constitutional and statutory rights and privileges, that no improper inducements were offered or given to Appellant prior to, during, or after the statements were given, that the written statements are admissible, and that Appellant's objections are overruled.   The trial court also prepared written findings of fact relating the above.

3

**DISCUSSION**

Appellant's sole point of error asserts that the trial court erred by admitting into evidence two written statements: the apology letter, and the formal statement, because they were obtained in violation of the Due Process Clause of the 14th Amendment as they were not given "freely" and "voluntarily." Appellant contends that the statements were not given freely and voluntarily inasmuch as he was intoxicated and was being subjected to coercive and unreasonable police conduct. Because the written statements were not a product of custodial interrogation and were given freely and voluntarily, we conclude that the trial court properly denied Appellant's motion to suppress.

Appellant argues that there are five specific facts which support his contention that the first statement, the apology letter, was "coerced:" (1) no *Miranda* warnings were provided; (2) Appellant was "extremely intoxicated;" (3) Appellant could not write the statements himself; (4) no independent person witnessed the process regarding the statements; and (5) Appellant was told that the purpose of the statement was an "apology letter" to be used to help the victim heal. Appellant argues that once the apology letter was obtained using coercive tactics the second statement, the formal "question and answer" statement, is fruit of the poisonous tree and/or was also coerced.

The Texas Code of Criminal Procedure article 38.22 prohibits the admission of an accused's statement resulting from a custodial interrogation unless the accused was advised of his *Miranda* rights and voluntarily waived those rights. TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2(a), 2(b), 3(a)(2)(West 2005); *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007)("Our

4

construction of 'custody' for purposes of Article 38.22 is consistent with the meaning of 'custody' for purposes of *Miranda*.").   However, the warnings required by Article 38.22 and *Miranda* only apply when a suspect is in custody.   *See Herrera*, 241 S.W.3d at 526.

A person is "in custody" if, under the circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest.   *Stansbury v. California*, 511 U.S. 318, 322-24, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996).[3]   We determine custody based on objective circumstances, and any subjective intent of law enforcement officers or the person being questioned are not controlling.   *Stansbury*, 511 U.S. at 323, 114 S.Ct. at 1529.

Because questions of custody present a mixed question of law and fact, we afford almost total deference to a trial judge's "custody" determination when the questions of historical fact turn on credibility and demeanor, although when the questions of historical fact do not turn on credibility and demeanor, we review a trial judge's "custody" determination *de novo*.   *See Herrera,* 241 S.W.3d at 526-27; *see also Jeffley v. State*, 38 S.W.3d 847, 853 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd).   The defendant, not the State, carries the initial burden of establishing that a statement was the product of custodial interrogation.   *Herrera*, 241 S.W.3d at 526.   A custody inquiry also includes an examination of all of the objective circumstances

---

[3]  As the Court of Criminal Appeals noted in *Dowthitt*, Texas courts have identified four general situations which may constitute custody:   (1) when the suspect is physically deprived of his freedom of action in a significant way; (2) when a law-enforcement official tells a suspect he cannot leave; (3) when law-enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) if there is probable cause to arrest and law-enforcement officials do not tell the suspect that he may leave.   *Dowthitt*, 931 S.W.2d at 255, *citing Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App. 1985).   The restraint upon freedom in the first three situations must be equivalent with that associated with an arrest as opposed to an investigative detention. *See Dowthitt*, 931 S.W.2d at 255.   In the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect, and such manifestation, considered in the totality of the circumstances, must lead a reasonable person to believe he is not free to leave.   *Id.*

surrounding the questioning.   *Dowthitt*, 931 S.W.2d at 255.   Being the focus of the investigation does not equate to being in custody.   *Meek v. State*, 790 S.W.2d 618, 621 (Tex.Crim.App. 1990).

Here, considering the totality of the circumstances, several factors tend to show that Appellant was not in custody when he made the statements.   The record indicates that Appellant was not under arrest or being interrogated at a station house, but was being questioned at his own residence.   Further, Officer Provost testified that he informed Appellant that he was not under arrest, and requested that Appellant sign a form acknowledging the same[4], which he did.   While at his residence, Appellant was not restrained in any way or forbidden from leaving the residence. Based on a review of the record, Appellant never asked to terminate the interview, never asked to leave the residence, and never asked to speak to anyone.

After considering all the circumstances regarding the interview, we agree with the trial court that a reasonable person in Appellant's situation would not feel restrained to the degree associated with a formal arrest or "custody."   Furthermore, according almost total deference to the trial court's determination regarding Mrs. Braden and Officer Provost's credibility and demeanor as we are required to do, it is clear that the trial court did not abuse its discretion by finding that Appellant was not in custody at the time he gave his written statement.   Because Appellant was not in custody, the provisions of Article 38.22 do not apply to the statements and no *Miranda* warning was required.   *See Ford vs. State*, 2009 WL 160922, *6 (Tex.App.--Fort Worth Jan. 22, 2009, pet. ref'd)(memo. op., not designated for publication).

Turning to Appellant's argument that he was intoxicated, an examination of the record as a whole does not support his claim that he was intoxicated at the time he made the written

---

[4]  An "Acknowledgment of Not Under Arrest" form, in which Appellant acknowledged that he understood that he was not in custody and was free to leave at any time.   *See, e.g. Phillips vs. State*, 2004 WL 362253, *1 (Tex.App.--Fort Worth Feb. 26, 2004, no. pet.)(not designated for publication)(noting existence and purpose of this form).

statements. Furthermore, even if he was intoxicated at the time, that fact alone does not serve to make the confession and written statements involuntary. *See Nichols v. State*, 754 S.W.2d 185, 190-91 (Tex.Crim.App. 1988); *Garcia v. State*, 919 S.W.2d 370, 387 (Tex.Crim.App. 1994) (citing *Nichols*). The trial court is the sole judge of the weight and credibility of the evidence presented at a hearing to suppress evidence and, absent a clear abuse of discretion, the trial court's finding may not be disturbed. *Garcia*, 919 S.W.2d at 387.

The only evidence presented in support of Appellant's alleged intoxication is the testimony of Mrs. Braden, who did not testify that she witnessed Appellant drinking, but made her assumption based on the presence of empty beer cans and the smell of beer. Officer Provost testified that Appellant did not appear intoxicated. While the trial court did not make a specific finding of fact regarding Appellant's intoxication, the record does not support Appellant being intoxicated. As a result, the trial court did not abuse its discretion in finding that the written statements were given voluntarily.[5]

Appellant next argues that he was unable to write out the statements himself. The Texas Code of Criminal Procedure article 38.22(1) defines a "written statement" as:

> [A] statement signed by the accused or a statement made by the accused in his own handwriting or, if the accused is unable to write, a statement bearing his mark, when the mark has been witnessed by a person other than a peace officer.

TEX.CODE CRIM.PROC.ANN. art. 38.22(1).

In overruling Appellant's motion to suppress, the trial court specifically addressed this issue, holding that each of the statements bore Appellant's signature and that "[t]he Court finds that this is a signature, not a mark. The Court further finds, based on the testimony, that the

---

[5] The issues of voluntariness and intoxication were presented to the jury in the jury charge, which the jury received and considered before finding Appellant guilty.

defendant is able to read and write at a fourth-grade level." Several Texas courts have held that a suspect may be uneducated and illiterate and yet still understand the nature of the rights he is waiving and voluntarily give a confession. *See Martinez v. State*, 131 S.W.3d 22, 35 (Tex.App.--San Antonio 2003, no pet.); *Peacock v. State*, 819 S.W.2d 233, 235 (Tex.App.--Austin 1991, no pet.); *Perales v. State,* 2008 WL 4531659, *4 (Tex.App.--Fort Worth Oct. 9, 2008, pet. dism'd, untimely filed)(memo. op., not designated for publication). The trial court did not abuse its discretion in rejecting this argument.

Appellant's fourth assertion is that no independent person witnessed the process of obtaining the statements. Appellant cites no case law or statute in support of this argument. Neither the Texas Code of Criminal Procedure or Texas case law imposes such a requirement, absent the situation where a suspect is unable to write his own signature and a mark is substituted. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22(1). As that is not the case here, where Appellant signed his own name, this argument is without merit.

Appellant's final issue is that the apology letter was coerced. He argues that "[i]t is obvious that Officer Provost was playing on the heart strings of an extremely intoxicated father." The trial court, in making its findings denying the motion to suppress, specifically found that no improper inducements were offered or given to Appellant prior to, during, or after the statements were given. The use of tactics which capitalize on an accused's "moral sense of right and wrong" or comprise "moral urging" does not in itself render an accused's statement involuntary, but is another circumstance to consider in the totality of the circumstances in examining the voluntariness of a statement. *See Nenno v. State*, 970 S.W.2d 549, 558 (Tex.Crim.App. 1998); *Gomes v. State*, 9 S.W.3d 373, 378 (Tex.App.--Houston [14th Dist.] 1999, pet. ref'd)(same).

8

In reviewing the totality of the circumstances, we conclude that the trial court did not abuse its discretion by finding that Appellant's will was not overborne and there was no coercion in obtaining either the first or second written statements. Given our holding that the first written statement was obtained properly, the second written statement is not "fruit of the poisonous tree." The trial court did not abuse its discretion by finding that the written statements were given voluntarily. Accordingly, we overrule Appellant's sole point of error.

## CONCLUSION

Having overruled Appellant's only point of error, we affirm the trial court's judgment.

March 28, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, Rivera, and Antcliff, JJ.

(Do Not Publish)

9